EXHIBIT A

*73407*

Record ID:  73407    Case Number:  CV170734-WA  CHATHAM SUPERIOR
Date Received:    09/01/2017    Time:
Special Service Inst:

**STATE OF GEORGIA**
**GWINNETT COUNTY**

**ATTORNEY'S ADDRESS**

FRAIN & LASHONDRA SIMPLIS
864 SOUTHBRIDGE BLVD

SAVANNAH  GA   31405

**FRAIN C SIMPLIS, ETAL**
**PLAINTIFF**

VS.

**JP MORGAN CHASE COMPANY, ETAL**
**DEFENDANT**

**NAME AND ADDRESS OF PARTY TO BE SERVED :**

JP MORGAN CHASE COMPANY
C/O CT CORPORATION
289 S CULVER STREET
LAWRENCEVILLE   GA   30046

---

### SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐    Sex____  Skin Color_____  Hair Color_____  Age____  Hgt____  Wgt____
   I have this day served the defendant_____ personally with a copy
   of the within action and summons.

---

**NOTORIOUS** ☐
   I have this day served the defendant _____ by leaving
   a copy of the action and summons at his most notorious place of abode in this County.

   Delivered same into hands of _____. described as follows :

| SEX | SKIN COLOR | HAIR COLOR | AGE | HGT | WGT |
|---|---|---|---|---|---|
| | | | | | |

---

**CORPORATION** ☒
   I have this day served the _JP Morgan Chase Company_____ a corporation
   by leaving a copy of the within action and summons with _Linda Peaks_____
   in charge of the office and place of doing business of said Corporation in this County.

---

**TACK AND NAIL** ☐

   I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to
   the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true
   copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the
   address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to
   answer said summons at the place stated in the summons.

---

**NON EST** ☐

   Deligent search made and defendant _____
   not to be found in the jurisdiction of this Court.

---

**SPECIAL PROCESS**

   SUMMONS, COMPLAINT FOR DAMAGES & EQUITABLE RELIEF

---

**COMMENTS**

---

Subscribed and sworn to before me this
_____ day of _____, _____.


Notary Public in and for said County and State

SHERIFF DOCKET _____    PAGE _____

Date: 08-03-17

Time: _____

Deputy Sheriff
_____
**GWINNETT COUNTY, GEORGIA**

# IN THE SUPERIOR COURT OF CHATHAM COUNTY

## STATE OF GEORGIA

Frain C. Simplis
LaShundra M. Simplis

CIVIL ACTION NUMBER _CV17-0734-WA_

**PLAINTIFF**

VS.

J.P. Morgan Chase beneficiary or
servicer of a loan Washington Mutual
Transland financial servicers and all person
claiming interest in real **DEFENDANT**
property located at 804 Suthbridge Blvd
Savannah, GA 31405, aka Lot 907
and Does 1-20

**SUMMONS**

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney whose name and address is:

an answer to the complaint which is herewith served upon you, within 30 days after service of summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.

This ___22nd  20___ day of ___June   July___   2017

TAMMIE MOSLEY
Clerk of Superior Court
CHATHAM COUNTY

By _____
Deputy Clerk

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.
SC-1 Rev 04

Clock#: 1696450
FILED FOR RECORD
7/20/2017 04:42pm
PAID: 265.00
Tammie Mosley
Superior Court of Chatham County
Chatham County, Georgia

IN CHATHAM SUPERIOR COURT

TERM_____

Clock#: 1696451
FILED FOR RECORD
7/20/2017 04:44pm
PAID: 215.00
Tammie Mosley
Superior Court of Chatham County
Chatham County, Georgia

Frain C. Simplis

LaShundra M Singleton

VS.

JP Morgan Chase, Translation of
Financial Services, as original lender and fund
Controller, Washington Mutual Bank; and ALL
Persons claiming interest in real property located at 8464
Southbridge Blvd, Savannah, GA 31405, aka LOT 907 and
ORIGINAL                                      Does 1-20

Filed in the Clerk's Office this _____ 24th _____

day of ___ July ___ 2017

_____
Clerk, Dep. Clerk, S.C.C.C. GA

_____
PLAINTIFF'S ATTORNEY

ENTEREDDLB    JUL 2 0 2017

Clock#: 1696450
FILED FOR RECORD
7/20/2017  04:42pm
PAID:  265.00
Tammie Mosley
Superior Court of Chatham County
Chatham County, Georgia

**IN CHATHAM SUPERIOR COURT**

_____ TERM _____

_____

Clock#: 1696451
FILED FOR RECORD
7/20/2017  04:44pm
PAID:  215.00
Tammie Mosley
Superior Court of Chatham County
Chatham County, Georgia

Frain C. Simplis

LaShundra M Simplis

VS.

JP Morgan Chase, Translar of
Financial Services, as original Lender and fund
Controller, Washington Mutual Bank; and ALL
Persons claiming interest in real property located at 864
Suthbridge Blvd, ORIGINAL Savannah, GA 31405, aka LOT 907 and
Does 1-20

Filed in the Clerk's Office this    24th

day of    July    , 2017

M ale Stet

Clerk, Dep. Clerk, S.C.C.C. GA

**PLAINTIFF'S ATTORNEY**

ENTERED DLB   JUL 2 0 2017

**IN THE SUPERIOR COURT OF CHATHAM COUNTY**

**STATE OF GEORGIA**

Frain C. Simplis
LaShundra M. Simplis

CIVIL ACTION NUMBER _CV17-0734-WA_

_____

**PLAINTIFF**

**VS.**

J.P. Morgan Chase beneficiary or
Xnicer of a loan Washington Mutual
Transland financial Xmices and all person
claiming interest in real **DEFENDANT**
property Wcated at 864 Suthbridge Blvd
Savannah, GA 31405, aka Lot 907
and Does 1-20                **SUMMONS**

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney whose name and address is:

Frain & LaShundra Simplis, Pro Se Litigants
864 Suthbridge Blvd
Savannah GA 31405

an answer to the complaint which is herewith served upon you, within 30 days after service of summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.

This 22nd 20 ~~July~~ day of ~~June~~ 2017

TAMMIE MOSLEY
Clerk of Superior Court
CHATHAM COUNTY

By_____
Deputy Clerk

## General Civil Case Filing Information Form (Non-Domestic)

**Court**
☑ Superior
☐ State

County __Chatham__
Docket # __CV17-0734-WH__

Date Filed __07-__-17__
MM-DD-YYYY

FILED IN OFFICE
17 JUL 20 PH 5:00

7/2017

**Plaintiff(s)**

Simplis Frain (.
Last | First | Middle I. | Suffix Prefix | Maiden

Simplis LaShundra K
Last | First | Middle I. | Suffix Prefix | Maiden

Last | First | Middle I. | Suffix Prefix | Maiden

Last | First | Middle I. | Suffix Prefix | Maiden

No. of Plaintiffs __2__

**Plaintiff/Petitioner's Attorney**   ☑ Pro Se

Last | First | Middle I. | Suffix

Bar # _____

**Defendant(s)**

Martin Stokes Chase Bank
Last | First | Middle I. | Suffix Prefix | Maiden

Transland Financial Smas
Last | First | Middle I. | Suffix Prefix | Maiden

Washington Mutual Bank and
Last | First | Middle I. | Suffix Prefix | Maiden

All persons claiming an interest in
Last | First | Middle I. | Suffix Prefix | Maiden

real property located at 864 Southbridge
Blvd
Savannah, GA 31407
Alct Lot 907
and Does 1-20

No. of Defendants __3+__

---

**Check Primary Type (Check only ONE)**

☐ Contract/Account

☐ Wills/Estate

☑ Real Property

☐ Dispossessory/Distress

☐ Presonal Property

☐ Equity

☐ Habeas Corpus

☐ Appeals, Reviews

☐ Post Judgement Garnishment, Attachment, or Other Relief

☐ Non-Domestic Contempt

☐ Tort (If tort, fill in right column)

☑ Other General Civil Specify_____

**If Tort is Case Type:**
(Check no more than TWO)

☐ Auto Accident

☐ Premises Liability

☐ Medical Malpractice

☐ Other Professional Negligence

☐ Product Liability

☑ Other Specify __Real Property__
real Estate

**Are Punitive Damages Pleaded?**  ☑ Yes  ☐ No

☑ I hereby certify that the documents in this filing (including attachments and exhibits) satisfy the requirements for redaction of personal or confidential information in O.C.G.A. 9-11-7.1

ENTEREDDLB  JUL 2 8 2017

Cptv15-3v1snt5-15; 5-23 V 6

RECEIVED FOR RECORD

7011 JUL 20  PM 4: 48

IN THE SUPERIOR COURT OF CHATHAM COUNTY

EASTERN JUDICIAL DISTRICT CIRCUIT *Tammie Mosley*

STATE OF GEORGIA

TAMMIE MOSLEY-CLERK
SUPERIOR COURT C.C. GA

FRAIN SIMPLIS;
LASHONDRA SIMPLIS,

CIVIL ACTION FILE NO.: *Cv17-0734-WH*

        Plaintiffs

vs.

J.P. MORGAN CHASE BANK, a beneficiary
or servicer of a loan; TRANSLAND FINANCIAL
SERVICES, as original lender and fund
controller; WASHINGTON MUTUAL BANK;
and All Persons claiming any
interest in real property located at 864 Southbridge
Blvd., Savannah, Georgia 31405 aka Lot 907
and Does 1-20,

**DEMAND FOR JURY TRIAL**

        Defendants

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

[To be filed with Ex Parte Application for Temporary Restraining Order to Enjoin Illegal

Foreclosure Sale ]

    1.    COMES NOW the Plaintiffs, Frain Simplis and LaShondra Simplis, who allege as

follows:

### JURISDICTION

This court has jurisdiction over this matter based on the laws of the state of Georgia.

The property and injuries alleged reside within this court's venue.

    2.   Plaintiffs file this an action for equitable relief *and* damages precipitated by the events

and acts of defendant s resulting in acts causing monetary injury and relief as prayed associated

1 COMPLAINT - Simplis et al., v. J.P. Morgan CHASE

ENTERED DLB    JUL 2 0 2017

Cptv15-3v1snt5-15; 5-23 V 6

therewith. Plaintiffs are a protected class of individuals as a homeowner of real property within the state of Georgia.

## PARTIES

3. Defendants are as appears on the caption and are in some manner responsible for the wrongful and illegal acts complained of herein. Defendants and each of them are national banks, lenders and capital providers of purchase money loans to the public, their agents, officers, managing agents, assignees, successors in interest, bank trusts operating through and under the authority of Pooling and Servicing Agreements, appraisers, notaries, actual trustees and holding company or pooling servicing agreement authorized trustees and on *information and belief* are business entities, LLC's and corporations, organized and existing under the laws of the State of Georgia and other jurisdictions, yet unknown who have contacts and are doing business herein.

4. through 6. - Reserved.

7. "All Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In The Property Described In The Complaint Adverse To Plaintiffs' Title, Or Any Cloud On Plaintiffs' Title Thereto" are sued herein pursuant to Georgia statutes.

8. Plaintiff is owner of real property the subject premises of their action known as address **864 Southbridge Blvd., Savannah, Georgia 31405** and known as **Lot 907.**

9. Plaintiffs do not know the true names and capacities of all of the defendants sued herein as DOES 1 through 20 ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names. Plaintiffs are informed and believe and based on such information and belief aver that each of the DOE Defendants is contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein. Plaintiffs will amend their Complaint to set forth the true names and capacities of each DOE Defendant when same are ascertained.

10. Plaintiffs are informed and believe and based on such information and belief aver that Defendants and DOE Defendants 1 through 20, inclusive, and each of them, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as averred herein.

11. Each of the Defendants named herein are believed to, and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of

2 COMPLAINT - Simplis et al., v. J.P. Morgan CHASE

Cptv15-3v1snt5-15; 5-23 V 6

the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

## GENERAL ALLEGATIONS

12.     Plaintiffs alleges current legal ownership of the subject premises by Warranty or Grant Deed. Plaintiffs are NOT in default under the terms and conditions of any existing Note and Deed of Trust. Plaintiffs pleads in the permissible alternative regarding the facts out of an abundance of caution and to encompass factual scenarios which may be proved at trial. The core elements of this action are to establish the correct identity of the purported Note and Mortgage or Deed of Trust holder as a matter of law and to quiet title and/or obtain declaratory relief establishing same, accounting of the proceeds paid under the Note, and for money damages for tortious conduct and breaches of contracts and for equitable relief as pled.

12a.  Plaintiffs allege that the relationship with the defendants was based on a negotiation of a money loan to construct a new home and then convert the Note into a permanent loan based on the full and timely completion of the construction which was governed by the construction Note. The funding of the loan and building process was performed through timed releases of funds from the supervising entity responsible for disbursing funds allocated from a separate escrow account established for that purpose. The construction Note was obtained 1-31-2007. The construction was to be completed per the contract on 1-31-2008, one year later. The performance of the construction was to occur after the Note closed escrow. The note was uniquely a "construction note" and not a residential purchase money note. The Note and loan was for $650,000 and included a loan for the lot in the sum of $132,000. The payments were placed into fund control for the building fund in a sum of approximately $518,000. A home equity line of credit was in place for expenses incurred. CHASE has admitted that it "does not know the true amount of indebtedness" that exists under the Note.

12a1. The lender of the construction funds was Transland Financial in the sum stated. The Note may be a dual sourced Note, part from WaMu and part from Transland Financial. The exact allocation of the sum of the funds is unknown to plaintiffs to whom this fact was kept secret. The Note itself only stated that the funding party lender was Transland Financial. Material deceptions and misrepresentation about the source of the funds was affirmatively uttered by Transland Financial [hereafter "TF"] leading plaintiffs to believe the loan was funded by TF when the real facts were different. TF acted in house as its own fund control and upon receipt of the contractor

3 COMPLAINT  - Simplis et al., v. J.P. Morgan CHASE

Cptv15-3v1snt5-15; 5-23 V 6

builder's invoices being approved by their inspector, the funds would be paid. The interest rate was on an unspecified "as used" rate of the unpaid approved allocation for each phase of the building and not the total sum "in escrow." This fact lead to the beginning of the confusion and uncertainty as to the sums due to the lender under the terms attendant to the original obligation.

12b. This action in part, is an attack on the defendants and each of them or their successors in interest who were to timely construct the new home and, the funding defendants who were to release funds to the builders timely.

12b1. As a result of misconduct to be shown, the home's *Certificate of Occupancy* [a predicate requirement of "moving in"] was greatly delayed for over 4 years and 2 months proximately caused due to the misconduct complained of as a result the contracts signed by originating defendants and preceding actors prior to Chase's involvement which were materially breached because of the delay and lack of timeliness of the funding causing delays is issuance of the certificate of occupancy. Over-charges in and payments withheld by original lender under the Note occurred is estimated to be in excess of at or near $395,000 constituting improper principle and interest and other charges that the funder defendants have kept secret from plaintiffs. CHASE as a successor in interest of the Note inherits all defenses and deficiencies existing under the Note and how it was handled by CHASE's predecessors.

12b2. The damages began to accrue and were and are of a continuing nature [day to day and ongoing] to the present year 2017 since the sum claimed by CHASE is affected by the original Note and its handling. The *statute of limitations* has thus, not yet vested or accrued on the breach of contract or fraud claims, pled herein, below.

13. As to operable TITLE to the property, Plaintiffs were to hold title to the property as joint tenants. The further allegations proffered are as follows:

a. The subject real property located at 864 Southbridge Blvd., Savannah, Georgia 31405 was purchased and title vested and recorded in January 31, 2007. The purchase price of the LOT was $132,000. The construction price was agreed to at $518,000 and was to be completed by January 31, 2008. The property was subject to a Note and Deed of Trust under the "construction loan." The construction was funded by defendant [Transland Financial Services] TLFS and to be constructed by a non-defendant who were the general contractors in charge of the construction.

Cptv15-3v1snt5-15; 5-23 V 6

b.  In or about 2007, the construction commenced. The duration of the construction was contractually to be ONE YEAR.  The delays caused the certificate of occupancy to be issued by governmental agencies LATE and not until March 3, 2012.

c.  Defendant TFS failed to fund the project by not paying the draws as they were submitted. These failures occurred on or about the calendar year 2007 and 2008 continuously. Moreover, plaintiffs alleged that the construction was delayed because TFS stopped funding the loan and ceased operations, apparently either dissolving or being subject to a bankruptcy in or about August of 2007.

d.  As a proximate cause of the delays, the move in date was delayed and <u>expenses of paying for alternate residency</u> were incurred in sums totaling estimated $110,000 in damages.

e.  As a result of the delays, plaintiffs had to expend for other items of foreseeable expenses unnecessarily estimated $150,000 in their own private capital and were damages in this sum plus interest due to the construction delays including attorney's fees.

f. Demand was made for reimbursement or crediting of expended sums under the permanent loan Note and was DENIED by the defendant CHASE.  Plaintiffs content they are owed this sum and seek an award of damages or a full credit against the Note's principle and interest alternatively.

13.a. The true and correct terms of the construction Note contract which was the ONLY applicable debt per the text of the Note was to have been <u>$ 0 down payment  3 % fixed interest rate over the listed prime rate; for 30 years with a monthly payment rate which varied based on the balance due</u>. This was to be enforced after the "permanent loan" which never accrued because the construction was NEVER completed and certainly not timely under the construction terms. Payments from fund control commenced on or about, 2007.  Plaintiffs allege that any Note or Contract not reflecting these terms, *inter alia* is a fraud and was not agreed to by plaintiffs or the sued defendants.

13.1. Plaintiffs allege and believe based on calculations of the payments tendered under the operative promissory NOTE  vs. sums artificially inflated by profligate and corrupt accounting practices involving the defendants and each of them show a discrepancy in plaintiffs favor in the sum estimated in excess of $650,000.

Cptv15-3v1snt5-15; 5-23 V 6

13.2. Plaintiffs allege that the actual permanent or the construction Note was **not in default status** and no default would have been justified under any calculation of the Note facts provided, above.

14.  Plaintiffs further allege that but for the corrupted and inaccurate accounting of what was "due" vs what was "claimed to be due" by defendants, that the Note would not be in default nor foreclosure be justified under the mortgage or lien instrument under which a non-judicial foreclosure action was initiated in or about April 1, 2017, with a fixed sale date of JUNE 6, 2017.

14.1  Under *Ga. Stats.*, all real estate based Note ownership must be proved as a condition to acting to protect the collection debt rights residing in the mortgage. Any assignment of a mortgage/deed of trust without holding the Note rights is not legally effective to convey rights to foreclose. In the event the note was paid off, the laws require a cancellation of the note and security deed and reconveyance of title usually by warranty deed back to plaintiffs. Hence, plaintiffs now seek in the alternative to quiet title to perfect plaintiffs' full ownership rights after a payoff of the debt so they may record such in the land records of this county and show fee simple absolute ownership.

15.  On or about April, 2015, defendant CHASE notified plaintiffs using false and fabricated tally sheets, accounting records, artificially incorrect factual claims of breach of the Note and Deed of Trust and loan documents that were incorrect and untrue that the Loan was in "default" but for reasons unrelated to the money borrowed. This was contested by the plaintiffs in written document challenging the claims of default, but never resolved to a certainty. To date the "default" sum in error amounts to over $450,000 unaccounted for by CHASE and its predecessors based on a third party confidential forensic analysis.

16.  On or about April 2015, CHASE now contends additionally that the Note is defaulted and money is due and owing in the sum of $650,000.

17. Reserved

18.  Plaintiffs allege that defendant CHASE does not have jurisprudential standing to sue as they have no evidence that they own the NOTE rights nor those under the deed of trust .

18a.  Plaintiffs alleged that CHASE has **breached a Novated/Modified contract entered into between Plaintiffs and defendant CHASE in or about October of 2016** guaranteeing and promising the following:

a./ reduce the monthly payments and

6 COMPLAINT  -  Simplis et al., v. J.P. Morgan CHASE

Cptv15-3v1snt5-15; 5-23 V 6

b./ agreement not to foreclose, the breach of which damaged Plaintiffs 'credit by defendants failing to correctly account for and credit payments made under the loan. Moreover, the plaintiffs' loan account was **overcharged** on their note from the time of the closing of escrow to the present resulting in **charges not owed**, but demanded by defendants, and placed other **illegal charges against Plaintiff loan account including forced placed insurance, penalties, interest, attorneys fees, impound fees, all in violation of the Note's terms and conditions.**. Their acts demonstrate a pattern and practice of illegal corrupt loan servicing and lending activity designed to foster a corrupt foreclosure activity causing Plaintiff damages and economic injury.

19. Plaintiffs allege that as presently constituted, the Note is not in default as there is a good faith dispute over the monetary sums actually due dating back to the construction loan and transmutation to the Permanent Loan NOTE, the sums being well in excess of $300,000. Moreover the default of the Note as presently claimed by CHASE is fatuous, uncertain, unintelligible, unenforceable, disputed and foreclosure on EITHER claimed grounds are without merit and illegal.

## FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF
### [against all defendants sued herein]

45.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 44, inclusive, as though fully set forth herein.

46.    Plaintiffs allege that a good faith case and controversy has arisen concerning the prospective duties, rights and remedies incumbent upon the parties in their action by reason of defendant beneficiary bank and other defendant's claims to equitable title and rights thereunder under the Note and Deed of Trust aka security deed. Equitable title vesting in any defendant as a beneficiary, loan servicer or trustee is challenged by Plaintiff, by asserting that no defendant has defendant's legal standing as a real party in interest to challenge ownership of either the note or security deed regardless of whether the Note was paid off. If the payoff is proved, the issue is moot and plaintiffs are entitled to a judgment showing such facts. If the note was not, then the ownership of the rights under both documents is challenges since NO EVIDENCE EXISTS that any named defendant or any third party hold those rights to enforce either document, not the debt and not the right to foreclose under the security deed. Included, therefore, is the question of the

7 COMPLAINT  - Simplis et al., v. J.P. Morgan CHASE

Cptv15-3v1snt5-15; 5-23 V 6

duty of Plaintiff to continue making payments to any defendant without a declaration of ownership of the note and concurrent right to foreclose under the deed of trust. Nor has any accounting been performed by any bank entity defendant to show the true sum of credits available to Plaintiffs and any unjustified charges levied on the loan account that are not enforceable or unjustified and subject to set off against the loan balance.

47.     Plaintiffs asserts that their circumstance is a basis for declaratory relief to determine and quiet the conflicting assertions and claims among the various parties.

48.     Plaintiffs assert that the case and controversy involves rights and duties arising under a promissory note and deed of trust the ownership of which may have been abrogated, voided, cancelled, hypothecated, transferred or assigned or vitiated by the original lender or any successor regardless of title or designation.

49.     Plaintiffs asserts that if no defendant can prove by the evidence its inherent right to enforce the alleged note or enforce the security deed, as a holder in due course, no enforcement of the note or associated deed of trust is lawful under Georgia law and general laws regarding *secured real property transactions.*

50.     Plaintiffs asserts if the assertions of para. 49, be proven, the debt is lawfully reduced to an unsecured debt or may invalidate the note altogether, and such finding may be determined by their cause of action, jointly or separately with others as pled herein.

## SECOND CAUSE OF ACTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO ENJOIN FORECLOSURE SALE OF SUBJECT PROPERTY TO ENJOIN FORECLOSURE OR COLLECTION ON THE NOTE OR ENFORCEMENT OF THE MORTGAGE [Violation of Foreclosure Protection Acts including the Failure of any Defendant to Comply with Pre-foreclosure and Pre-Non-Judicial Foreclosure Requirements Permitting Injunction of Foreclosure]

51.     Plaintiffs incorporate herein by reference the allegations made in all preceding paragraphs and causes of action inclusive, as though fully set forth herein.

52.     If filed with this complaint or moved for hereafter, Plaintiffs hereby **incorporates** the content of the entire <u>Application for TRO and Preliminary Injunction</u> as though filly set forth including the Prayer for relief as though fully set forth hereafter. Good cause exists where an imminent loss of a unique asset is threatened, no available remedy at law exists, irreparable harm is evidenced, and there is no means available to determine the equivalent damages sustained, and a

likelihood of success on the injunctive application.  Plaintiffs allege all the elements exist for injunctive issuance.  Under their strict statutory scheme any violation of the requirements by a foreclosing defendant or third party agent, vis. trustee selling agent, must be enjoined. The core facts and elements are set forth in the Ex Parte Application for TRO and Preliminary Injunction to be filed.

52a.    In this case at bar, undeniable evidence exists that defendants have violated statutes and at common law including those supporting the issuance of a preliminary injunction.

53.    Plaintiffs is entitled to injunctive relief to stop all auction or sale activity by defendants of their subject property for reasons stated. See *Ex Parte Application* if later filed asserting grounds and good cause for issuance of a TRO and OSC re preliminary injunction, hereafter.

54.    The content of *their verified complaint* are sufficient to satisfy the requirements of Ga Stats.

55.    As alleged in the co-filed Ex Parte Application for TRO and Preliminary Injunction, Plaintiffs allege that each defendant has engaged in conduct sufficient to warrant the relief so sought and without which Plaintiffs will forever lose a valuable unique asset, Plaintiffs primary residence and single family home on which Plaintiffs were **not deficiently late in paying on a note** as pled inter *alia.*

56.    Plaintiffs seeks relief consistent with fairness and equity and will suffer irreparable harm without an injunctive order by writ being issued.

57. -74. Reserved

### THIRD CAUSE OF ACTION

### FOR FRAUDULENT INTENTIONAL MISREPRESENTATION [DECEIT] [AGAINST ALL DEFENDANTS]

75.    Plaintiffs incorporate herein by reference the allegations made in prior paragraphs, inclusive, as though fully set forth herein. [1]  Plaintiffs were deceived and the deception about the

---

[1] To prevail on a claim of **fraudulent misrepresentation** in Georgia, a Plaintiffs must establish, by the heightened evidentiary standard of clear and convincing evidence:
(1) One who willfully deceives another with intent to induce that person to alter the person's position to the person's injury or risk is liable for any damage that the person suffers.
(2) A deceit, within the meaning of subsection (1), is either:
(a) the suggestion as a fact of that which is not true by one who does not believe it to be true;

9 COMPLAINT  - Simplis et al., v. J.P. Morgan CHASE

Cptv15-3v1snt5-15; 5-23 V 6

funding of the Construction Loan from 2007 has now resulted in CHASE the purported noteholder claiming inconsistent allegations. Exhibit 4 shows that the Note is NOT in default for financial reasons of payment arrears. However, Exhibit 7 counters this claiming the Note is due and in arrears. CHASE cannot have it both ways. The Notice of Intent to foreclosure alleges that that Note is not financially deficient. Thus, a non-judicial foreclosure would be unavailable since the Deed of Trust request that foreclosure is limited to financial arrears. This is not the case herein.

## PREFATORY FACTS IN SUPPORT – FAILURE OF PRIOR NOTE HOLDER TO PAY FOR CONSTRUCTION OR IN A TIMELY MANNER BREACHING THE TERMS OF THE NOTE WHICH VITIATES ENFORCEMENT

75.1.   CHASE has no right to foreclose based on its purported ownership of the Note based on the defenses of breach of contract, impossibility of performance and prevention of performance due to the failure of the loan originator from where CHASE obtained the Note to pay for the building and construction when presented with invoices from the builder. The enforcement of the note under these circumstances cannot be enforced at law.

75 a. The tort of deceit is akin to this cause as equally applicable. [2] The intentional acts are currently on-going and continuing to the present, vitiating any bar due to the passage of time.

76.   Specifically pled as follows, the facts are clear. Plaintiffs engaged a loan to 1. Buy land and 2. To build a home. This was completed as alleged above. However, CHASE who apparently bought the Note wants to foreclose. But for which reason? No lender has the right under Ga. Law to foreclose on a loan that was NEVER FUNDED. Even if funded, the loan terms

---

(b) the assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;

(c) the suppression of a fact by one who is bound to disclose it or who gives information of other facts that are likely to mislead for want of communication of that fact; or

(d) a promise made without any intention of performing it.

(3) One who practices a deceit with intent to defraud the public or a particular class of persons is considered to have intended to defraud every individual in that class who is actually misled by the deceit.

[2] (1) One who willfully deceives another with intent to induce that person to alter the person's position to the person's injury or risk is liable for any damage that the person suffers.

(2) A deceit, within the meaning of subsection (1), is either:

(a) the suggestion as a fact of that which is not true by one who does not believe it to be true;

(b) the assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;

(c) the suppression of a fact by one who is bound to disclose it or who gives information of other facts that are likely to mislead for want of communication of that fact; or

(d) a promise made without any intention of performing it.

(3) One who practices a deceit with intent to defraud the public or a particular class of persons is considered to have intended to defraud every individual in that class who is actually misled by the deceit.

10 COMPLAINT  - Simplis et al., v. J.P. Morgan CHASE

Cptv15-3v1snt5-15; S-23 V 6

required a certificate of occupancy [CO] to issue within one year from funding approval. The CO did not issue until nearly 4 years later in breach of the agreement to build timely, as plaintiffs will declare under oath, because the funding was not used for the building. Since the object of the contract was thwarted, the loan is worthless for failure of consideration, and material interference with performance  given the facts as alleged. Thus, CHASE holds a legally worthless Note and DOT.

76. a.  It was told to plaintiffs that their Note was NOT in default. As of May, 2015, CHASE claims that the Note is in default for reasons **unrelated to arrears**. CHASE also claims anew that the loan is newly "in default" and the sum of over $900,000 is due to pay off the loan current with the arrears incorrectly stated as $668,741.31 as of April 27, 2017. These calculations and facts are untrue and fraudulent.

76 b.  It was stated to plaintiffs that also, plaintiffs needed to sign a "request for mortgage assistance," incorrectly since there is not requirement in the Note or Mortgage that the borrower perform this act.  Vasbinder, stated in response to plaintiffs' request for loan payoff sums if any, that a 'request' must first be signed. This formed the basis of the commencement of the fraud on plaintiffs who had asked for a payoff sum that was denied by CHASE approximately five times.

77.  To the extent the acts and representations of defendants were intentional or reckless and made with no intent to perform, punitive damages in a sum not less than five million dollars are sought in addition to economic and non-economic damages and recoverable as a remedy under state law governing punitive damages prayed for in the sum of $5,000,000.

78. to 82.

## FOURTH CAUSE OF ACTION FOR BREACH OF GOOD FAITH AND FAIR DEALING
### [BY ALL DEFENDANTS]

83.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 82, inclusive, as though fully set forth herein.

83.1 Plaintiffs allege defendants and predecessors of CHASE had and have breached the **promissory Note** and secondary promises [to novate the payments] alleged all to Plaintiffs damages. Plaintiffs allege that all contracts are governed by laws of Georgia.  A promissory Note is a contract.  A novation is a modification to a contract. Plaintiffs and defendants were parties to two novations.  The terms of contracts may be express or implied.  Some terms of the bilateral contract "Note" and the subsequent contract/ novations affected monthly duties to pay [which formed the

11 COMPLAINT  - Simplis et al., v. J.P. Morgan CHASE

Cptv15-3v1snt5-15; 5-23 V 6

basis of promissory estoppel] that were breached regarding the two novations that DB and its agents promised.

83.2 Plaintiffs allege that Promissory Note and the Novations in question contained **implied covenants of good faith and fair dealing** which was breached by reason of the above alleged conduct by defendants and Does 1-20, inclusively. Plaintiffs further allege that a strong public policy is encouraged by enforcement of implied terms of fair dealing. **Fraud** is patently not good faith or fair dealing.

84.     Plaintiffs' original loan agreement or Note, set forth dates by which monthly principal and interest payments were due, and when late fees and other charges could be assessed. An implied term of the refinance contract was a **duty to keep accurate and honest records of all transactions** *vis a vis* the Plaintiffs and defendants and each of them and Does 1-100. **Excess charges were applied wrongfully** to Plaintiffs account and entered in defendants' book and accounting records in the sum alleged in prior causes of action, including excessive interest not due or payable. The Promissory Note did not provide protections to borrowers from such acts by the lenders or their assigns as part of the express terms of the contract. However, all contracts have **implied contractual duties and terms** under Ga. law which make illegal any act which promotes, fosters or condones a harm to a person's financial reputation or credit by the application of wrongful acts and omissions. Such <u>wrong and dishonest entries</u> breached the contract as they purported to show Plaintiffs in arrears, late, tardy, and in default, which was not the case. These breaches formed the basis of and show a false history of late payments and caused a false default on the note.

85.     Subsequent note holders continued, by succession, the breaches by **never correcting the accounting errors caused initially by these sued defendants and foreclosing parties,** and their agents and Does 1-100, inclusively.

86.     The Defendants breached the loan terms and Note by failing to deal with good faith and fair dealing, vis., failing to keep accurate records of all income received, credited, charges and payment histories breaching the duty alleged herein and the contract thereby damaging Plaintiffs in sums to be proven at trial.

87.     A second tier of breach of contract was the promises made to Plaintiffs that they would **not be defaulted or foreclosed** upon.

88. to 106. Reserved

12 COMPLAINT  - Simplis et al., v. J.P. Morgan CHASE

Cptv15-3v1snt5-15; 5-23 V 6

## FIFTH CAUSE OF ACTION FOR
## QUIET TITLE
### (AGAINSE ALL DEFENDANTS CLAIMING RIGHTS TO THE SUBJECT PROPERTY)

107.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 106, inclusive, as though fully set forth herein.

108.    Plaintiffs are the equitable owners of the Subject Property which has the following legal description as pled, *supra*.

109.    Plaintiffs seek to quiet title and settle the quality of ownership rights possessed by the plaintiff against the claims of Defendants and ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS TITLE, OR ANY CLOUD ON PLAINTIFFS TITLE THERETO; and DOES 1 through 20.

110.   Plaintiff DISPUTES that any named defendant has any right to assert title interests in the subject property by any instrument including security deed of trust and no right to entertain any rights including the right to foreclosure, offering the Subject Property for sale at a trustee's sale, et al. Plaintiff alleges she has made a **tender** of all sums due under the note or alternatively, has offered to do so. and entitled to a quieted title as of January 31, 2007.

111. Plaintiffs allege that there is no requirement to properly "plead" in a quiet title count requiring Plaintiffs to allege any offer of or actual tender of the sums due, IF all sums purportedly due are **disputed** and such a dispute is known in the pleadings and put in issue lest. Plaintiffs allege that they have tendered or offered to tender all sums due and not disputed as required to plead quiet title.

112.    Plaintiffs seek to quiet title as of **January 31, 2007**, the date of the instant loan. Plaintiffs seeks a judicial declaration that the title to the Subject Property is vested in Plaintiffs alone and that any Defendant and each of them be declared to have no interest estate, right, title or interest in the subject property nor their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property.

113. – 122. Reserved.

## SIXTH CAUSE OF ACTION FOR ACCOUNTING [AGAINST ALL DEFENDANTS,]

123. Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 112, inclusive, as though fully set forth herein. Plaintiffs' claims right to a setoff for

credits due and owing but not yet credited and pray for an accounting of the loan file. Hence, an accounting ordered by this court suits the need for a practical mathematical determination of the accuracy of defendant's entire basis for its defenses.

124.   Plaintiffs demands an accounting of their entire loan account from any and all defendants and Does who have any knowledge, information, duties or rights under the original loan and Note concerning the transaction to determine the correct amount of the loan, note, payments made, payments due, credits due and payoff balance and that responsible defendants pay the cost of their cause of action as part of the damages awarded to Plaintiffs.

124.a.  Plaintiffs allege that there is no statutory or common law requirement that there be a "fiduciary" relationship to impose their remedy as the questioned sums paid, not credited, and the consequence of their uncertainty justify their remedy in equity. There is no way to correct this morass of bookkeeping irregularities without an order to account for sums "due" then paid.

## SEVENTH CAUSE OF ACTION FOR SPECIFIC PERFORMANCE BY PROMISSORY OR EQUITABLE ESTOPPEL OF THE TERMS OF THE ORIGINAL NOTE OR NOVATION AGREEMENT [AGAINST ALL DEFENDANTS]

147.   Plaintiffs repeats and re-pleads the entirety of the above allegations by incorporating same. Plaintiffs allege that the contract that was orally entered was part of the scheme to defraud Plaintiffs. Plaintiffs should be allowed under a theory of *promissory estoppel*, et al., to present facts to prove their oral agreement under State Stats. which reflects the **Restatement of Contracts** on point and holds, in pertinent part,

> "Where a contract, which is required by law to be in writing, is prevented
> from being put into writing by the fraud of a party thereto, any other party
> who is by such fraud led to believe that it is in writing, and acts upon
> such belief to their prejudice, **may enforce it**
> **against the fraudulent party.**"

148.   Based on the above allegations, Plaintiffs states a cause of action for specific performance by equitable or promissory estoppel was created and is enforceable, based on the promises within the original Note and alternatively, within a novated contract for reduced monthly payments and that no foreclosure will be imposed based on such promises as alleged more fully in the Fraud cause of action. The promises were not put into a writing by the original lender, subsequent beneficiary or CHASE the current alleged beneficiary. Set offs or credits cannot now

14 COMPLAINT  -  Simplis et al., v. J.P. Morgan CHASE

Cptv15-3v1snt5-15; S-23 V 6

be denied and defendants must be estopped to deny the agreements consistent with the content of the FRAUD cause of action alleged, *ante*. Alternatively, if the Note was paid off, the former beneficiary and security deed holder must reconvey by warranty deed and cancel the debt in a recordable instrument, which plaintiffs prays for and order requiring the performance thereof.

## EIGHTH CAUSE OF ACTION FOR BREACH OF WRITTEN [NOTE] AND ORAL CONTRACTS [NOVATION] [both express and implied] AGAINST ALL DEFENDANTS

149.  Plaintiffs repeats and re-pleads the entirety of the above allegations by incorporing same. Breach of contract seminally stems from the existence of an agreement. Further, the contract [vis., promissory note] was breached. This fact is asserted, as well under Ga. law articulated in the jury instructions. [3] The breach was induced by a deceptive promise in violation of state law. [4] Damages have been alleged with specificity herein above and are awardable as a proper remedy in sums lost, and in setoffs for overcharges. [5] As alleged above, the sum so far totals in excess of $200,000 as of May 1, 2017. The breaches are ongoing and continuing. This is a part of the breach of the Novation agreement.

150.  Plaintiffs allege that the terms of the Promissory Note and Deed of Trust and all implied terms that may be read into the terms under the law of Contracts were breached in two tiers of breaches, as follows;

[3] ELEMENTS OF BREACH OF CONTRACT UNDER TEXAS LAW
THE ELEMENTS OF A BREACH OF CONTRACT CLAIM ARE (1) THE EXISTENCE OF A VALID CONTRACT BETWEEN PLAINTIFF AND DEFENDANT, (2) THE PLAINTIFF'S PERFORMANCE OR TENDER OF PERFORMANCE, (3) THE DEFENDANT'S BREACH OF THE CONTRACT, AND (4) THE PLAINTIFF'S DAMAGE AS A RESULT OF THE BREACH.

[4] IBID

[5]      DAMAGES AS A REMEDY FOR BREACH OF CONTRACT —
CONSEQUENTIAL DAMAGES
In an action for breach of contract, the Plaintiffs may recover those damages which naturally arise from the breaking of the contract. Those damages are the consequences of breaking the contract which the defendant had reason to foresee would take place or such damages as may reasonably be supposed to have been contemplated by both parties when they made the contract.
                DAMAGES INCURRED IN RELIANCE ON OR IN
PREPARATION OF CONTRACT
A party harmed by breach of contract by another party may recover any expenses or losses incurred. This amount should be reduced by any expenditures that the breaching party can show the wronged party would have incurred if the contract had been performed.

Cptv15-3v1snt5-15; 5-23 V 6

151. First, all Notes contains *implicit terms* that protect a borrower from being taken advantage of by allowing that any change in the terms be enforced by borrower which beneficially changes by *novation and or modification* of any terms. Two such changes and NEW PROMISES were made to the borrower-Plaintiffs in that as alleged in the cause of action for FRAUD and resultant intentional infliction of emotional distress, by the lenders or their agents and assignees. The promises were to discount the monthly payments, if the borrower would "stop making payments for 90 days."[6] When Plaintiffs accepted the beneficial promise to reduce the payments then paid or offered to pay the reduced sum, lender defendant materially breached and refused to give the discounted payments.[7] The tender or offer to tender funds to the promising entity defendant amounts under contract law to be an enforceable acceptance and thus, supports enforcement of the Novation in Plaintiffs favor.

152. Plaintiffs allege a <u>second</u> **identifiable separate breach of contract** damaging their interest by contracting to **not foreclose** or declare a default as a material part of the novation, and abate any effort to do so as part of the new contract developed as alleged in the preceding paragraphs. Their provision was breached materially damaging the Plaintiffs.[8] The damages are seen in the loss of down payment, excess charges including overpayment of principal and interest for each month after the agreed to reduction under the novation agreement, excessive fees, charges, forced placed insurance, and miscellaneous fees unjustified. All charges are subject to a legal setoff or credits as a matter of law.

153. But for their secondary breach independently and jointly with the first tier breach, the Plaintiffs has been injured economically [out of pocket losses] in a sum of $500,000 or greater as proven at trial.

154. As for the Note being fully paid off, thus, satisfied, the required conduct after the payoff is to cancel the debt in writing and reconvey fee simple title to the plaintiffs which Defendants have not done to date breaching and damaging the ownership rights held by plaintiff to a clear and unencumbered title.

155. -157. Reserved

## NINTH CAUSE OF ACTION FOR SPECIFIC PERFORMANCE

[Against CHASE, only]

---

[6] See Fraud cause of action, *supra*.
[7] See ¶ 140, *supra*.
[8] Ibid.

16 COMPLAINT  - Simplis et al., v. J.P. Morgan CHASE

Cptv15-3v1snt5-15; 5-23 V 6

174. Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 173, inclusive, as though fully set forth herein.

175. Plaintiffs allege they are entitled to an equitable order of enforcement of the pled agreements denied, refused and rejected corruptly and by breaching the terms of those multiple agreements beneficial to the plaintiffs.

176. Plaintiffs as prayed for herein seek an order enforcing the terms of each agreement with orders that the agreements are valid, enforceable, and shall be deemed vested for the benefit of the plaintiffs herein. Plaintiffs seek leave to amend this or any other provision needing refined pleading for specificity hereafter as the court may require. In the event the Note is void, performance ordered must be inclusive of either a quieting of title and signing off on all documents effecting same or the return by rescission of all sums CHASE has received from its assignee to which the court determines is not proper and amounts to an unjust enrichment.

## TENTH CAUSE OF ACTION FOR RACKETEERING UNDER GEORGIA "RICO" STATUTE [Georgia RICO statute, OCGA § 16-14-4(a),

177. Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 173, inclusive, as though fully set forth herein.

178. The defendants have conspired and endeavored to violate the Georgia RICO statute, OCGA § 16-14-4(a), by conspiring and endeavoring, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, and personal property of any nature, including money, all in violation of OCGA § 16-14-4(c).

179 The defendants have conspired and endeavored to violate the Georgia RICO statute, OCGA § 16-14-4(b), as persons employed by or associated with any enterprise, that is, an association-in-fact of the defendants, to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity, all in violation of OCGA § 16-14-4(c).

180. Specifically, the defendants have conspired to and endeavored to engage in, and have repeatedly committed, the following criminal activities under Georgia and federal law, which constitute a pattern of racketeering activity under OCGA § 16-14-3(8 & 9):

theft in violation of OCGA § 16-8-1 *et seq.*; securities fraud in violation of OCGA § 10-5-24; mail fraud in violation of 18 U.S.C. § 1341; obstruction of justice in violation of 18 U.S.C. § 1512;

Cptv15-3v1snt5-15; 5-23 V 6

influencing witnesses in violation of OCGA § 16-10-93; tampering with evidence in violation of 16-10-94; and extortion in violation of 18 U.S.C. § 1951.

181.  Specifically, the defendants have conspired to and endeavored to engage in, and have repeatedly committed, the following criminal activities under Georgia and federal law, which constitute a pattern of racketeering activity under OCGA § 16-14-3(8 & 9): theft in violation of OCGA § 16-8-1 et seq.; securities fraud in violation of OCGA § 10-5-24; mail fraud in violation of 18 U.S.C. § 1341; obstruction of justice in violation of 18 U.S.C. § 1512; influencing witnesses in violation of OCGA § 16-10-93; tampering with evidence in violation of 16-10-94; and extortion in violation of 18 U.S.C. § 1951.

182.  In furtherance of such conspiracy to violate the Georgia RICO statute, in violation of OCGA § 16-14-4(c), the defendants knowingly and willfully committed extortion against plaintiffs Simplis by illegally making an offer based on fraud and with no intent to fulfill the offer which inter alia, materially affects the application of Internal Revenue Codes governing tax benefits and rights under federal and state laws and in an effort and in order to continue to conduct the defendants' racketeering enterprise.

183.  In furtherance of such conspiracy to violate the Georgia RICO statute, in violation of OCGA § 16-14-4(c), the defendants knowingly and willfully committed obstruction of justice under federal law and influencing witnesses and tampering with evidence contained in their business offices and within plaintiff's loan file to cover up and deflect information supposed to the accurate and correct under other laws including federal banking and lending laws and further, in violation of Georgia law against plaintiffs by illegally influencing and attempting to influence witnesses and outcomes in a court process and to alter evidence to continue to conduct the defendants' racketeering enterprise and to deprive plaintiffs of their rights to a fair and just hearing on this complaint.

184.  Plaintiffs as a proximate and actual cause of this conduct has suffered extreme emotional distress as the result of the extortionate, willful, malicious, and intentional acts of the defendants.

185.  As a result of the defendants' actions, plaintiffs have suffered and is continuing to suffer injury including, but not limited to, substantial loss of income, and loss of benefits.

186.  As a result of the defendants' actions, plaintiff has suffered and is continuing to suffer injury including emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of

18 COMPLAINT  -  Simplis et al., v. J.P. Morgan CHASE

Cptv15-3v1snt5-15; 5-23 V 6

enjoyment of life, and other non-pecuniary losses.

187. Plaintiffs seek to redress the wrongs alleged herein, and this suit for equitable, compensatory, and punitive damages, is plaintiff's only means of securing adequate relief.

188. Plaintiffs have been injured by reason of such violations of OCGA § 16-14-4 and therefore is entitled to three times their actual damages sustained, punitive damages, plus all attorneys' fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred, pursuant to OCGA § 16-14-6(b).

## ELEVENTH CAUSE OF ACTION TO ABATE AND BAR THE ENFORCEMENT OF THE NOTE AND TRUST DEED BASED ON VIOLATION OF THE STATUTE OF LIMITATIONS [AGAINST ALL DEFENDANTS]

189. Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 188, inclusive, as though fully set forth herein.

190. Plaintiffs plead the bar of the statute of limitations on enforcing a written instrument debt or promissory note. Such a bar is based on well-settled Ga. Law:

> In Georgia, *written contracts* have a statute of limitations period of **6** years from the time in which the debt becomes due and payable and the period runs from the date of last payment (OCGA 9-3-24).
>
> In an academic commentary summary, the following applies:
>
> > Under Georgia law contracts under Georgia law are generally subject to a **6-year statute of limitations**. No evidence exists that in 2007 at the time the Note was developed or signed, that the parties knowingly intended a different statute to apply nor is such stated in the Note, Trust Deed or any attachments, allonges or riders. The clear intent of the parties are manifest in the documents signed.

191. In this case at bar, as alleged herein above, the debt was contractually due and payable under contract within one year from the date of commencement of the close of escrow under the Construction Note. Suit would have to be commenced under Ga. Law not later that 6 years from 2008, i.e., one year from the Note date as this was the fixed date the performance was to be completed but clearly was not.

192. The facts show that no legal action in a court of law has been filed timely to enforce this promissory note. This this court must issue by declaration a permanent injunction against

19 COMPLAINT - Simplis et al., v. J.P. Morgan CHASE

Cptv15-3v1snt5-15; 5-23 V 6

CHASE or any other entity or person from filing to enforce their Note rights as a matter of undisputed law.

**PRAYER FOR RELIEF:**

Wherefore, Plaintiffs pray for judgment against the Defendants and each of them, jointly and severally, as follows:

1. For a declaration of the rights and duties of the parties by declaratory judgment;

2. For issuance of an Order restraining foreclosure sale;

3. To cancel, set aside and vacate the recordation of any Notice of Default;

4. To reform all deeds in favor of Plaintiffs name.

5. To quiet title in favor of Plaintiffs as pled.

6. For compensatory, special, general, statutory, treble and punitive damages according to proof against all Defendants in sums in excess of 20,000,000.

7. For attorney's fees according to contract.

8. For civil penalties pursuant to statute, restitution, injunctive relief and reasonable attorney's fees according to proof.

9. For reasonable costs of suit and such other and further relief as the Court deems proper.

10. For TRO and preliminary injunction as pled and moved in the TRO applications.

11. For orders correcting the damage caused to each Plaintiffs credit scores affecting their credit worthiness and for orders correcting errant scores according to proof under the FCRA.

12. To abate and foreclosure activity for violation of the statute of limitation.

May 4, 2017

LaShondra Simplis, plaintiff in pro se

Vrain Simplis, plaintiff in pro se
864 Southbridge Blvd,
Savanna, Georgia 31405

20 COMPLAINT - Simplis et al., v. J.P. Morgan CHASE

Cptv15-3v1snt5-15; 5-23 V 6

Tel: *912-844-0407*

**{not for service of the summons or complaint}**

**CERTIFICATE OF SERVICE [personally or by U.S. mail]**

I hereby certify that a true and correct copy of the foregoing document has been served upon the following counsel via [Personal Delivery] or [facsimile] or by U.S. Mail in accordance with the applicable Rules of Civil Procedure on _____, 20_____:

Attorneys or Parties served by U.S. Mail to:

x

21 COMPLAINT  -  Simplis et al., v. J.P. Morgan CHASE

Plantiff
Exhibit 1

# NOTE




SIMPLIS
LOAN NUMBER:     14005145
MINNUM:          100031700140051454

JANUARY 31, 2007          SAVANNAH          GEORGIA
    [Date]                 [City]            [State]

864 SOUTHBRIDGE BLVD AKA LOT 907, SAVANNAH, GA 31405
                    [Property Address]

## SEE ATTACHED *** RIDER TO NOTE

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   650,000.00
(this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is    TRANSLAND
FINANCIAL SERVICES, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer
and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay
interest at a yearly rate of    ***    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in
Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    ***    day of each month beginning on.
    ***        . I will make these payments every month until I have paid all of the principal and interest and
any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its
scheduled due date and will be applied to interest before Principal. If, on    ***
I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity
Date."

I will make my monthly payments at    2701 MAITLAND CENTER PKWY, STE. 300,
MAITLAND, FL 32751-7294
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    ***

## 4. BORROWER'S RIGHT TO PREPAY     See Attached Rider to Note

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the
interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits,
then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;
and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note
Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct
payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of my monthly payment by the end of

 

LOAN NUMBER: 14005145

15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    (B) Default

    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    (C) Notice of Default

    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    (D) No Waiver By Note Holder

    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    (E) Payment of Note Holder's Costs and Expenses

    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

    Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

    Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

    I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

    This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

        If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

        If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3200 1/01
DOCUKIAJ
DOCUKIAJ.VTX   08/21/2001      (page 2 of 3 pages)

LOAN NUMBER: 14005145

Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
FRAIN SIMELIS                      -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

PAY TO THE ORDER OF:

_____ (Seal)
                                   -Borrower

WITHOUT RECOURSE
TRANSLAND FINANCIAL SERVICES, INC.                  [Sign Original Only]

BY: _____
BENJAMIN LEE WOFFORD
VICE PRESIDENT

**Lender:**          TRANSLAND FINANCIAL SERVICES, INC., (the "Lender")

**Date of Note:**          January 31, 2007

WHEREAS, BORROWER has executed the Note (the "NOTE") to which this Rider is made, together with a MORTGAGE (the "MORTGAGE") of even date therewith securing the NOTE, in connection with a loan to BORROWER from LENDER.

The parties agree as follows:

1.    PAYMENT OF PRINCIPAL AND INTEREST: Interest shall be payable at the rate of 3.000% over the "Prime Rate" as hereinafter defined and shall be subject to change on a daily basis. In no event will the interest rate fall below 6.750%. Interest only shall be calculated on a daily basis and be payable monthly, commencing February 1, 2007 continuing on the first day of each month thereafter until the "Modification Date" as hereinafter determined, at which time principal and interest shall be paid in accordance with the modification (as provided in paragraph 2 of the Rider) to the NOTE.

1.1    For the purpose hereof, "Prime Rate" shall mean the rate of interest as established from time to time and shown in the Wall Street Journal. A certificate of LENDER as to the Prime Rate in effect on any day shall be conclusive for purposes hereunder as to the Prime Rate in effect on such date.

2.    INTEREST RATE AMORTIZATION, TERM ADJUSTMENT, AND THE MODIFICATION DATE: BORROWER and LENDER agree that the NOTE and MORTGAGE shall be modified by a Modification Agreement to be executed by BORROWER at LENDER's request, upon the date of the first to occur of the following events (referred to herein as the "Modification Date"):

2.1    The final inspection by the appropriate governmental authority certifying compliance of the completed improvements with applicable governmental regulation, or

2.2    Issuance of a CERTIFICATE OF OCCUPANCY, or

2.3    Occupancy by the BORROWER of the subject premises, or

2.4    12 months from the date of this NOTE.

The Modification Agreement shall modify the terms of the NOTE as follows:

2.5    The interest rate shall be adjusted so as to provide that the interest rate shall coincide to the prevailing interest rate for similar mortgage loans made by the LENDER, TransLand Financial Services, Inc., in accordance with the requirements of the LENDER.

2.6    The maturity date shall be adjusted so as to provide for a 360 month remaining term of the MORTGAGE.

2.7    The amortization shall be modified so as to provide the amortization of principal and interest over the full remaining 360 month term of the MORTGAGE, in accordance with the requirements of LENDER.

3.    DEFAULT: Failure of BORROWER to complete construction within 12 months from the date of this NOTE or to execute the Modification Agreement and such other instruments as shall be reasonable required in connection therewith by the LENDER, within fifteen (15) days of the Modification Date, shall constitute a default and the outstanding principal balance plus accrued interest of the NOTE and MORTGAGE shall be immediately due and payable without further notice to BORROWER. In the event of a default, the outstanding principal balance shall bear interest at the highest rate allowable under GEORGIA law. LENDER shall also be entitled to exercise all remedies provided in the MORTGAGE and NOTE, or, as is otherwise available to it at Law or in equity, in the event of default of the BORROWER.

4.    In the event the loan does not modify (convert from a construction to permanent loan status), a prepayment penalty of 1.5% of the loan amount will be charged at the time of payoff.

5.    LENDER'S RESCISSION RIGHT: If any provision of this Rider shall be contrary to the requirements now or hereafter established for sale of the NOTE and the MORTGAGE securing it to any secondary market investor, this Rider shall be deemed null and void and the provision hereof shall terminate immediately.

| | 01/31/2007 |
|---|---|
| **BRAIN SIMPLIS** | Date |
| Borrower | |
| | 01/31/2007 |
| | Date |
| Co-Borrower | |

*Plantiff*
*Exhibit 1a*

156336756

Clock#: 908244
FILED FOR RECORD

2/13/2007 04:49pm

PAID: 48.00

Daniel W. Massey, Clerk
Superior Court of Chatham County
Chatham County, Georgia

GEORGIA INTANGIBLE TAX

PAID $#1950.00

PEN&INT $#.00

AFTER RECORDING RETURN TO:
TRANSLAND FINANCIAL SERVICES
INC C/O NATIONAL TITLE
CLEARING, INC.
2100 ALF 19 NORTH

PALM HARBOR, FL 34683

ORIGINAL DEED

PREPARED BY:
MICHELLE CLIFTON

TRANSLAND FINANCIAL SERVICES
INC.

2701 MAITLAND CENTER PKWY,
STE. 300

MAITLAND, FL 32751-7294



BOOK 320 Z PAGE 683

---

[Space Above This Line For Recording Data]

### SECURITY DEED

SIMPLIS
LOAN #: 14005145
MIN: 100081700140051454
PIN: 1-1008F-01-028

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated JANUARY 31, 2007 , together with all Riders to this document.

(B) "Borrower" is FRAIN SIMPLIS, A MARRIED MAN JOINED BY HIS WIFE LASHONDRA SIMPLIS

Borrower is the grantor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is TRANSLAND FINANCIAL SERVICES, INC.

Lender is a CORPORATION                                      organized and existing under the laws of
FLORIDA                           . Lender's address is    2701 MAITLAND CENTER PKWY,
STE. 300, MAITLAND, FL 32751-7294

(E) "Note" means the promissory note signed by Borrower and dated JANUARY 31, 2007 . The Note states that Borrower owes Lender
SIX HUNDRED FIFTY THOUSAND AND 00/100
Dollars (U.S. $ 650,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than DECEMBER 1, 2037 .

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3011 1/01          (page 1 of 13 pages)
DOC1KGA1
DOC1KGA1.VTX   04/28/2005

14005145

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☒ 1-4 Family Rider ☒ Other(s) [specify] C/P RIDER TO NOTE

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

COUNTY of CHATHAM
[Type of Recording Jurisdiction]       [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

BOOK Z 320 PAGE 684

14005145

which currently has the address of   864  SOUTHBRIDGE BLVD AKA LOT 907
                                          [Street]

**SAVANNAH**                          , Georgia    31405          ("Property Address"):
[City]                                            [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.
    2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied

BOOK  320  PAGE  685

14005145

first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
DOCUKOA4
DOCUKOA4.VTX 08/22/2005

Form 3011 1/01

(page 4 of 15 pages)

BOOK 320

PAGE 7 686

14005145

necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

BOOK 320 PAGE 687

Case 4:17-cv-00183-JRH-GRS Document 1-2 Filed 10/05/17 Page 37 of 69

BOOK 320 PAGE 2 688

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3011 1/01     (page 6 of 13 pages)
DOCUKGA0:
Document.vmt 06/20/2002

14005145

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, change locks, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
DOCUKD47
2002/68A7.VZX  08/25/2005                    Form 3011 1/01        (page 7 of 13 pages)

BOOK 320
PAGE 689

14005145

the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has -- if any -- with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security

BOOK 320
PAGE 690

14005145

Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14.  Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

BOOK 320   PAGE 2   691

14008148

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower

BOOK 320
PAGE 692

14005145

pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory.

BOOK 320 PAGE 693 Z

14005145

authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BOOK 2 320

PAGE 694

14005145

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument

Signed, sealed and delivered in the presence of:

_____  _____  1-31-07
- BORROWER - FRAIN SIMPLIS - DATE -

Leshondra Simplis

BOOK 320
PAGE 695

Unofficial Witness:

[Space Below This Line For Acknowledgment]

Notary Public

County of

State of
My Commission Expires:

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3011 1/01          (page 13 of 13 pages)
DOCUKIA13
DOCUKIA13.VFX   08/23/2005

Plantiff
Exhibit Z

Clock#: 908242
FILED FOR RECORD

2/13/2007  04:48pm

PAID:  12.00

Daniel W. Massey, Clerk
Superior Court of Chatham County
Chatham County, Georgia

Real Estate Transfer Tax

PAID $#132.00

*C. Harris*
For Clerk of Superior Court

Space above this line for recorders use only

BOOK 320
PAGE N 681

Inglesby, Falligant, Horne.
Courington & Chisholm, P.C.
P.O. Box 1368
Savannah, Georgia 31402-1368
Attn: J. Daniel Falligant
File No.: 20062-217

**WARRANTY DEED**

THIS INDENTURE, made and entered into this 31st of January, 2007, by and between

**BARTHELMESS & BARTHELMESS, INC.,**
**a corporation,**

as party or parties of the first part (hereinafter referred to as the "Grantor"), and

**FRAIN SIMPLIS AND LASHONDRA SIMPLIS,**
**AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP,**
**AND NOT AS TENANTS IN COMMON**

(pursuant to O.C.G.A. §44-6-190)(hereinafter referred to as "Grantee") (the words "Grantor" and "Grantee" to include their respective heirs, legal representatives, successors and assigns where the context requires or permits);

WITNESSETH that, Grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration, in hand paid at and before the sealing and delivery of these presents, the receipt and sufficiency of which is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto said Grantee, all of Grantor's right title and interest in and to that tract or parcel of land described as follows, to-wit:

Said property is briefly described as Lot 907, Southbridge at Berwick Plantation, Phase 1-A, Chatham County, Georgia, and more particularly described on Exhibit "A" attached hereto and made a part hereof by this reference.

THIS CONVEYANCE and the warranties herein contained are expressly made subject to those easements, covenants, restrictions and rights-of-way of record, and ad valorem taxes for the current year not yet due and payable.

TO HAVE AND TO HOLD the said described Property, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, only to the proper use, benefit and behoof of the said Grantee forever in FEE SIMPLE.

AND THE SAID GRANTOR will warrant and forever defend the right and title to the above described Property unto the said Grantee against the claims of all persons and entities whomsoever.

IN WITNESS WHEREOF, the Grantor has signed and sealed this Deed on the day and year first above written.

Signed, sealed and delivered this 31st day of January, 2007, in the presence of:

Barthelmess & Barthelmess, Inc.

Unofficial Witness

George W. Barthelmess, as President

Notary Public
My Commission Expires:
(NOTARIAL SEAL)

(CORPORATE SEAL)

EXHIBIT "A"

ALL that certain lot, tract or parcel of land situate, lying and being in County of Chatham, State of Georgia, and being known as Lot 907, Southbridge at Berwick Plantation, Phase I-A as shown and designated on a Map prepared for Southbridge Development Company, Inc. by Thomas & Hutton Engineering Co., Boyce L. Young, RLS#2282, dated February 17, 2004, being known as A Subdivision Plat of Southbridge at Berwick Plantation, Phase I-A, Lots 881-971, being portions of Future Development Parcels 2, 3 & 5 of Southbridge Phase 17, also Tract "F-1" and a portion of Tracts "F-2" and "F-3" of the C&S Tract known as Berwick Plantation, 7th G.M.D., recorded in Subdivision Map 30-S, page 8, Chatham County, Georgia Records. Reference is hereby made to said Subdivision Map Book for better determining the metes, bounds and dimensions of the property herein conveyed.

File No. 20062-217

BOOK 320

PAGE N 682



# CHATHAM COUNTY
## CERTIFICATE OF OCCUPANCY

DEPARTMENT OF BUILDING SAFETY
REGULATORY SERVICES
P.O. Box 8161
SAVANNAH, GA 31412-8161



Plantiff
Exhibit 3

Gregori S. Anderson, CBO
Director

FAX 912-201-4301
912-201-4300

Clifford Bascombe, CBO, CFM
Assistant Director

---

THIS CERTIFICATE CERTIFIES THAT TO THE BEST OF THE COUNTY'S KNOWLEDGE AND BELIEF THAT AT THE TIME OF ISSUANCE, THIS STRUCTURE HAS BEEN ERECTED IN SUBSTANTIAL COMPLIANCE   WITH APPLICABLE COUNTY CODES. NO OVERSIGHT BY THE OFFICE OF THE BUILDING OFFICIAL SHALL EXCUSE VIOLATION OF ANY ORDINANCE OF CHATHAM COUNTY.

PROJECT ADDRESS: 864 SOUTHBRIDGE BOULEVARD

SUBDIVISION:

LOT #:

PHASE #:

PIN NUMBER: 1-1008F-01-028

PERMIT #: 06-02036

PERMIT TYPE:  RESIDENTIAL NEW
PERMIT

OCCUPANCY TYPE:  RESIDENTIAL - SINGLE
FAMILY HOME

FLOOR AREA: 4935

# OF STORIES: 2.0

CONSTRUCTION TYPE: TYPE V -
UNPROTECTED

USE ZONE: PUD-C

FLOOD ZONE: X

LEGAL DESCRIPTION:  LOT 907 SOUTHBRIDGE AT BERWICK PLANTATION PH 1A  SMB 30S 8A-F   .585 AC

BUILDING CODES
IN EFFECT:

INTERNATIONAL RESIDENTIAL CODE 2006 EDITION WITH STATE OF GEORGIA AMENDMENTS
INTERNATIONAL BUILDING CODE 2006 EDITION WITH STATE OF GEORGIA AMENDMENTS

ADDITIONAL CONDITIONS:

DATE CERTIFICATE OF OCCUPANCY ISSUED:   03 JAN 2012

BY: _____

GREGORI S. ANDERSON, CBO
BUILDING OFFICIAL
CHATHAM COUNTY, GEORGIA

CLIFFORD BASCOMBE, CBO, CFM
ASSISTANT DIRECTOR OF BUILDING SAFETY
CHATHAM COUNTY, GEORGIA

Plaintiff
Exhibit 4



CHASE

**Chase (Mail Code OH4-7399)**
P.O. Box 183205
Columbus, OH 43218
For Undeliverable Mail Only

May 20, 2015

FRAIN SIMPLIS
1312 B 52ND ST
SAVANNAH, GA 31404

**Your mortgage loan is in default and your property may be referred to foreclosure**

Account:          0756336756
Property Address: 864 SOUTHBRIDGE BLVD
                  SAVANNAH, GA 31405

Dear FRAIN SIMPLIS:

We are writing to give you important, time-sensitive information about your mortgage loan because your property is close to being referred to foreclosure.

We want to give you important information about the status of your account, discuss next steps, and let you know about assistance options that may be available. Be sure you read this letter in its entirety. It spells out, in legal terms, why we are close to moving forward with the foreclosure process.

We are required to notify you of the following:

**Important account information**

Your loan is currently in default for reasons other than delinquent monthly mortgage payments. Since you have defaulted on the terms of your mortgage other than your monthly payments, you must resolve the reasons for the default, in addition to any amounts that are or may become due. If you need an explanation of those reasons, please call us at one of the telephone numbers listed below.

- The total amount needed to pay off your mortgage loan is $995,790.06. Since delinquent payments aren't the primary reason for your default, you may not currently have a dollar amount due. Please note this is subject to change, pending the final resolution of your default.
- The amount of the principal obligation under the mortgage is $647,578.45.
- The date through which the account is paid is January 1, 2008.
- The maturity date on this account is January 1, 2008.
- The date of the last full payment was December 5, 2007.
- The current interest rate in effect for the loan is 10.25000 %. Depending on your plan type, this interest rate may not be the current interest rate in effect on your loan as of the date of this letter,

THIS IS NOT AN EVICTION NOTICE

but rather, the interest rate in effect as of the date through which the account is paid (January 1, 2008).
- The date on which the interest rate may next reset or adjust is N/A. Depending on your plan type and the oldest missed payment, this date may be in the past.
- The amount of any prepayment fees to be charged, if any, is not applicable.
- The amount of late payment fees included in the above payoff amount is $0.00.

## Right to foreclose

Chase services the mortgage loan on your property located at the address referenced above. Borrower executed a promissory note secured by a mortgage or deed of trust ("the security instrument"). Chase intends to cause a foreclosure action to be commenced on the mortgaged property. The foreclosure will be conducted in the name of:

JPMorgan Chase Bank, National Association ("Noteholder").

Noteholder, directly or through an agent, has possession of the promissory note. The promissory note has been duly indorsed.

## Borrower's responsibilities

- If you continue to occupy the property, you have the responsibility to maintain the property and an obligation to continue to pay taxes owed until a sale or title transfer occurs.
- If you wish to abandon the property, you must contact us to discuss alternatives to foreclosure under which you can surrender the property in exchange for compensation.

## Additional account information

Upon written request, you are entitled to the following information:

- A copy of your payment history from the period the loan was last less than 60 days delinquent to present
- A copy of the note or lost note affidavit, where applicable
- The name of the Investor that holds the loan
- If we have commenced foreclosure or filed a Proof of Claim, you may obtain copies of any assignments of mortgage or deed of trust required to demonstrate our right to foreclose under applicable state law

You can submit a written request for the information listed above to:

Regular Mail:    Chase
                 Attn: Correspondence Mail
                 Mail Code LA4-5555
                 700 Kansas Lane
                 Monroe, LA 71203

## Availability of loss mitigation options

Unless you have directed us not to, we have made good faith efforts to contact you by telephone and/or mail to review your eligibility for a loan modification. According to our records, with respect to this event of default:

THIS IS NOT AN EVICTION NOTICE

__X__     We have been unable to contact you or we have not yet received a complete initial package /
borrower response package from you to consider you for a loan modification.

___     You did not qualify for a loan modification, your most recent loan modification application has
been denied, or you failed to complete the trial plan for a loan modification.

___     You have stated that you are not interested in pursuing an available loan modification or you have
not accepted our loan modification offer.

___     You are ineligible for a loan modification because

  • Your property is ineligible (your property has been condemned) or

  • The investor/guarantor/insurer who has the right to specify loss mitigation options with
    respect to your loan will not permit loan modifications.

If your circumstances have changed, if you believe that your application for a modification was denied in
error, or if you would like to discuss any alternative to foreclosure, including a loan modification, please
contact us immediately.

If you are currently engaged in discussions with a Customer Assistance Specialist to explore alternatives
to foreclosure, including the possibility of selling your home for less than your owe, please advise your
Customer Assistance Specialist that you have received this correspondence and continue to work with
him or her to explore foreclosure alternatives.

**Assistance available to you**

  • We have enclosed a document that lists the assistance options that may be available to you and
    gives additional information about them.
  • You can contact us by calling 1-800-848-9380 to obtain information regarding your mortgage.
  • The U.S. Department of Housing and Urban Development (HUD) has a list of agencies that offer
    free mortgage-assistance counseling. For a list of agencies, call HUD at 1-800-569-4287, or at 1-
    800-877-8339 for TTY service for the deaf or hard of hearing, or visit online at
    http:/www.hud.gov/offices/hsg/sfh/hcc/fc/.

If you have any questions, please call us at one of the telephone numbers listed below.

Sincerely,

Chase
1-866-550-5705
1-800-582-0542 TTY
www.chase.com

Enclosed:
- Possible Mortgage Assistance Options

**THIS IS NOT AN EVICTION NOTICE**

2

## Possible Mortgage Assistance Options

### Mortgage Modification
**Overview:** A modification is a change to the terms of your mortgage loan to lower your monthly payment amount or interest rate.
**Benefit:** This option permanently changes your mortgage loan so your payments or terms of your loan are more affordable.

### Selling the Home for Less Than You Owe
**Overview:** Sell the home and pay off a portion of your principal balance when you owe more money on your mortgage loan than the home is worth.
**Benefit:** Allows you to move out of the home and avoid going through foreclosure. In some cases, relocation assistance may be available.

### Releasing Your Property
**Overview:** Transfer the ownership of your property to us if this is a first mortgage loan.
**Benefit:** Allows you to move out of the home without going through foreclosure. In some cases, relocation assistance may be available. This is useful when there are no other liens on your property.

### Repayment Plan
**Overview:** Pay back your past-due amount with your regular monthly payments over an extended period of time. This means your monthly payments will be higher than normal as part of a repayment plan. You may also be required to make an initial down payment (or contribution) to get started.
**Benefit:** Allows you time to catch up on past-due payments over a specific period of time.

### Forbearance Plan
**Overview:** Make reduced mortgage payments or stop making payments for a specific period of time.
**Benefit:** Allows you time to improve your financial situation.

Plaintiff
Exhibit 5

**CHASE** ⬢

Chase (Mail Code OH4-7399)
P.O. Box 183205
Columbus, OH 43218
For Undeliverable Mail Only

05/17/2016

FRAIN SIMPLIS
1312 E 52ND ST
SAVANNAH, GA 31404

**Notice of default (Notice of intent to foreclose)**

Account:             ******6756
Property Address:  864 SOUTHBRIDGE BLVD
                   SAVANNAH, GA 31405

Dear FRAIN SIMPLIS:

Under the terms of the Mortgage or Deed of Trust ("Security Instrument") securing your loan, JPMorgan Chase Bank, N.A. ("Chase") hereby notifies you of the following:

1. You are in default because you failed to pay the account above in full when it reached maturity on 01/01/2008. All sums secured by the Security Instrument are immediately due and payable.

2. Action required to cure the default: You must pay in full the remaining balance on the loan by 06/21/2016. As of 05/17/2016, the payoff amount is $889,818.36. Please note that the amount required will change daily. You should call us at 1-800-848-9380 to obtain a current quote. If you have any reason to dispute the payoff amount, or if you have any questions, please call us immediately.

3. If you fail to pay off the loan by 06/21/2016, Chase will commence foreclosure proceedings without further notice to you. If this happens, Chase will be entitled to collect its expenses incurred in pursuing the remedies provided in the Security Instrument. These amounts may include, but are not limited to, allowable foreclosure/attorney fees, and other expenses permitted by your loan documents or applicable law.

4. You have the right to bring a court action to assert the non-existence of a default or any other defense to foreclosure and sale.

5. Kindly remit the payoff amount to the remittance address listed below. Please note that Chase policy requires certified funds for a final payoff. Please refer to the address below for payment information or contact us if you have any questions.

Mail:          Chase

CR44585-c
BW055

Mail Code OH4-7126
3415 Vision Drive
Columbus, OH 43219-6009

If you send us less than the full amount owed, we may in our sole discretion apply such partial payment to your loan without waiving any default or waiving our right to accelerate the loan and continue with foreclosure proceedings.

6. If you are unable to pay off the loan, Chase has a variety of homeowners assistance programs that might help you resolve your default and keep your home; however, we need to talk with you to discuss these options and determine which of them might be appropriate for your circumstances. Please call us as soon as possible at 1-800-848-9380.

7. While the loan remains in default, we will perform certain tasks to protect our interest in the property, including visits to your property at regular intervals during the default. This will be done to determine, as of the date of the inspection, the property condition, occupancy status, and possibly your plans for curing the default and paying off this loan. You should anticipate that any costs incurred by Chase will be added to the amount you now owe if permitted by your loan documents or applicable law.

For more information, visit chase.com/MortgageAssistance or call 1-866-550-5705. Counseling is also available through a variety of nonprofit organizations experienced in homeownership counseling and approved by the Secretary of Housing and Urban Development (HUD). A listing of such organizations may be obtained by calling HUD toll-free at 1-800-569-4287 or at hud.gov.

Sincerely,

Chase
1-800-848-9380
1-800-582-0542 TTY
www.chase.com

Esta comunicación contiene información importante acerca de la cuenta. Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-800-848-9380.

Enclosed:
- Servicemembers Civil Relief Act Notice

## Important Legal Information

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, to the extent your original obligation was discharged or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance with non-bankruptcy law and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. Nothing in this letter (including our use of the words "your," "loan," "mortgage," or "account") means that you're required to repay a debt that's been discharged. Any payment you make on the account is voluntary, but we may still have rights under the security instrument, including the right to foreclose on the property.

If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.

CR44585-c
BW055

| Servicemembers Civil Relief Act Notice Disclosure | U.S. Department of Housing and Urban Development Office of Housing | OMB Approval 2502-0584 Exp 12/31/2017 |
|---|---|---|

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a Servicemember, may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. §§ 501-597b) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force, Marine Corps and Coast Guard).
- Reserve and National Guard personnel who have been activated and are on federal active duty.
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the president and supported by federal funds.
- Active Servicemembers of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or Military action.

## What Legal Protections are Servicemembers Entitled to Under the SCRA?

- The SCRA states that a debt incurred by a Servicemember, or Servicemember and spouse jointly, prior to entering Military service shall not bear interest at a rate above 6% during the period of Military service and one year thereafter, in the case of an obligation or liability, consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of Military service in the case of any other obligation or liability.
- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within one year after the Servicemember's Military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within one year after the Servicemember's Military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.
- The SCRA contains many other protections besides those applicable to home loans.

## How Does a Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6%, a Servicemember or spouse may contact Chase Military Services toll-free at 1-877-469-0110 or provide a written notice with a copy of the Servicemember's Military orders to the address below:

  Chase
  Attention: SCRA Request
  P.O. Box 183240
  Columbus, OH 43218-3240

- There is no requirement under the SCRA, however, for a Servicemember to provide a written notice or a copy of a Servicemember's Military orders to the lender in connection with a

CR44585-c
BW055

foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the Military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the Servicemember, and examining their files for indicia of Military service. Although there is no requirement for Servicemembers to alert the lender of their Military status in these situations, it still is a good idea for the Servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?

- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A Military legal assistance office locator for all branches of the armed forces is available at http://LegalAssistance.law.af.mil/content/locator.php.
- "Military One Source" is the U.S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.MilitaryOneSource.com/scra or call 1-800-342-9647 (toll-free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

Plantiff
Exhibit 6

**CHASE ⬤**

Chase (Mail Code OH4-7399)
P.O. Box 183205
Columbus, OH 43218
For Undeliverable Mail Only

June 24, 2016

FRAIN SIMPLIS
1312 E 52ND ST
SAVANNAH, GA 31404

**Your mortgage loan is in default and your property may be referred to foreclosure**

Account:           0756336756
Property Address:  864 SOUTHBRIDGE BLVD
                   SAVANNAH, GA 31405

Dear FRAIN SIMPLIS:

We are writing to give you important, time-sensitive information about your mortgage loan because your property is close to being referred to foreclosure.

We want to give you important information about the status of your account, discuss next steps, and let you know about assistance options that may be available. **Be sure you read this letter in its entirety.** It spells out, in legal terms, why we are close to moving forward with the foreclosure process.

We are required to notify you of the following:

**Important account information**

Your loan is currently in default for reasons other than delinquent monthly mortgage payments. Since you have defaulted on the terms of your mortgage other than your monthly payments, you must resolve the reasons for the default, in addition to any amounts that are or may become due. If you need an explanation of those reasons, please call us at one of the telephone numbers listed below.

- The total amount needed to pay off your mortgage loan is $893,799.38. Since delinquent payments aren't the primary reason for your default, you may not currently have a dollar amount due. Please note this is subject to change, pending the final resolution of your default.
- The amount of the principal obligation under the mortgage is $647,578.45.
- The date through which the account is paid is January 1, 2008.
- The maturity date on this account is January 1, 2008.
- The date of the last full payment was December 5, 2007.
- The current interest rate in effect for the loan is 10.25000 %. Depending on your plan type, this interest rate may not be the current interest rate in effect on your loan as of the date of this letter, but rather, the interest rate in effect as of the date through which the account is paid (January 1, 2008).
- The date on which the interest rate may next reset or adjust is N/A. Depending on your plan type and the oldest missed payment, this date may be in the past.

**THIS IS NOT AN EVICTION NOTICE**

- The amount of any prepayment fees to be charged, if any, is not applicable.
- The amount of late payment fees included in the above payoff amount is $0.00.

**Right to foreclose**

Chase services the mortgage loan on your property located at the address referenced above. Borrower executed a promissory note secured by a mortgage or deed of trust ("the security instrument"). Chase intends to cause a foreclosure action to be commenced on the mortgaged property. The foreclosure will be conducted in the name of:

JPMorgan Chase Bank, National Association ("Noteholder").

Noteholder, directly or through an agent, has possession of the promissory note. The promissory note has been duly indorsed.

**Borrower's responsibilities**

- If you continue to occupy the property, you have the responsibility to maintain the property and an obligation to continue to pay taxes owed until a sale or title transfer occurs.
- If you wish to abandon the property, you must contact us to discuss alternatives to foreclosure under which you can surrender the property in exchange for compensation.

**Additional account information**

Upon written request, you are entitled to the following information:

- A copy of your payment history from the period the loan was last less than 60 days delinquent to present
- A copy of the note or lost note affidavit, where applicable
- The name of the Investor that holds the loan
- If we have commenced foreclosure or filed a Proof of Claim, you may obtain copies of any assignments of mortgage or deed of trust required to demonstrate our right to foreclose under applicable state law

You can submit a written request for the information listed above to:

Regular Mail:       Chase
                    Attn: Correspondence Mail
                    Mail Code LA4-5555
                    700 Kansas Lane
                    Monroe, LA 71203

**Availability of loss mitigation options**

Unless you have directed us not to, we have made good faith efforts to contact you by telephone and/or mail to review your eligibility for a loan modification. According to our records, with respect to this event of default:

X       We have been unable to contact you or we have not yet received a complete initial package / borrower response package from you to consider you for a loan modification.

___     You did not qualify for a loan modification, your most recent loan modification application has been denied, or you failed to complete the trial plan for a loan modification.

THIS IS NOT AN EVICTION NOTICE

____ You have stated that you are not interested in pursuing an available loan modification or you have not accepted our loan modification offer.

____ You are ineligible for a loan modification because

- Your property is ineligible (your property has been condemned) or

- The investor/guarantor/insurer who has the right to specify loss mitigation options with respect to your loan will not permit loan modifications.

If your circumstances have changed, if you believe that your application for a modification was denied in error, or if you would like to discuss any alternative to foreclosure, including a loan modification, please contact us immediately.

If you are currently engaged in discussions with a Customer Assistance Specialist to explore alternatives to foreclosure, including the possibility of selling your home for less than you owe, please advise your Customer Assistance Specialist that you have received this correspondence and continue to work with him or her to explore foreclosure alternatives.

## Assistance available to you

- We have enclosed a document that lists the assistance options that may be available to you and gives additional information about them.
- You can contact us by calling 1-800-848-9380 to obtain information regarding your mortgage.
- The U.S. Department of Housing and Urban Development (HUD) has a list of agencies that offer free mortgage-assistance counseling. For a list of agencies, call HUD at 1-800-569-4287, or at 1-800-877-8339 for TTY service for the deaf or hard of hearing, or visit online at http:/www.hud.gov/offices/hsg/sfh/hcc/fc/.

If you have any questions, please call us at one of the telephone numbers listed below.

Sincerely,

Chase
1-866-550-5705
1-800-582-0542 TTY
www.chase.com

Enclosed:
- Possible Mortgage Assistance Options



**Important Legal Information**

This communication is an attempt to collect a debt and any information obtained will be used for that purpose.

If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.

To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.

## An Important Reminder For All Our Customers

As stated in the "Questions and Answers for Borrowers about the Homeowner Affordability and Stability Plan" distributed by the Obama Administration, "Borrowers should beware of any organization that attempts to charge a fee for housing counseling or modification of a delinquent loan, especially if they require a fee in advance." Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt. Never make a mortgage payment to anyone other than your mortgage company without their approval. Loan modification scams should be reported to PreventLoanScams.org, or by calling 1-888-995-HOPE (1-888-995-4673). We offer loan modification assistance free of charge (i.e., no modification fee required). Please call us immediately at 1-866-550-5705 to discuss your options. The longer you delay, the fewer options you may have.

## Important Notice To Servicemembers And Their Dependents

If you or any occupant of your home are or recently were on active duty or active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA). This includes protection from foreclosure or eviction. You may also be eligible for benefits and protections under state law or Chase policy. SCRA and state Military benefits and protections also may be available if you are the dependent of an eligible Servicemember.

Eligible service may include:

- Active duty with the Army, Navy, Air Force, Marine Corps, or Coast Guard, or
- Active service as a commissioned officer of the National Oceanic and Atmospheric Administration, or
- Active service as a commissioned officer of the Public Health Service, or
- Service with the forces of a nation with which the United States is allied in a war or Military action, or
- Service with the National Guard of a state militia under a state call of duty, or
- Any period when you are absent from duty because of sickness, wounds, leave, or other lawful cause.

For more information, please call Chase Military Services at 1-877-469-0110.

CR38828
BW381

THIS IS NOT AN EVICTION NOTICE

## Possible Mortgage Assistance Options

### Mortgage Modification
**Overview:** A modification is a change to the terms of your mortgage loan to lower your monthly payment amount or interest rate.

**Benefit:** This option permanently changes your mortgage loan so your payments or terms of your loan are more affordable.

### Selling the Home for Less Than You Owe
**Overview:** Sell the home and pay off a portion of your principal balance when you owe more money on your mortgage loan than the home is worth.

**Benefit:** Allows you to move out of the home and avoid going through foreclosure. In some cases, relocation assistance may be available.

### Releasing Your Property
**Overview:** Transfer the ownership of your property to us if this is a first mortgage loan.

**Benefit:** Allows you to move out of the home without going through foreclosure. In some cases, relocation assistance may be available. This is useful when there are no other liens on your property.

### Repayment Plan
**Overview:** Pay back your past-due amount with your regular monthly payments over an extended period of time. This means your monthly payments will be higher than normal as part of a repayment plan. You may also be required to make an initial down payment (or contribution) to get started.

**Benefit:** Allows you time to catch up on past-due payments over a specific period of time.

### Forbearance Plan
**Overview:** Make reduced mortgage payments or stop making payments for a specific period of time.

**Benefit:** Allows you time to improve your financial situation.

THIS IS NOT AN EVICTION NOTICE

Plaintiff Exhibit
7

**CHASE**



01/10/2017

||..|.|....||.|||.|.|||..||.||.||..||.|.|..|||.|..|||||..||..||||.|.||.||.||.||.||.||.|..|||..|
002120 - 1 of 2 NSP0HDLA-Z5 J2718187 0000000

FRAIN SIMPLIS
864 SOUTHBRIDGE BLVD
UNIT AKA LOT 907
SAVANNAH, GA 31405

**Acceleration Warning (Notice of Intent to Foreclose)**

Account:  3005341925 (the "loan")
Property Address:  864 SOUTHBRIDGE BLVD
UNIT AKA LOT 907
SAVANNAH, GA 31405 (the "property")

Dear FRAIN SIMPLIS:

Under the terms of the Mortgage or Deed of Trust ("Security Instrument") securing your Loan,
JPMorgan Chase Bank, N.A. ("Chase") hereby notifies you of the following:

1. You are in default because you have failed to pay the required monthly installments
commencing with the payment due 11/01/2016.

2. As of 01/10/2017, total monthly payments (including principal, interest and escrow if
applicable), late fees, insufficient funds (NSF) fees, and other fees and advances due under
the terms of your loan documents in the total amount of $12,461.53 are past due. This
past-due amount is itemized below. If applicable, your account may have additional escrow
amounts that have been paid out and are due on the Loan. If you have any questions about
the amounts detailed below, please call us as soon as possible at 1-800-848-9380.

Total Monthly Payments:  $10,340.42
Late Fees:  $157.61
NSF Fees:  $0.00
Other Fees:[1]  $0.00    *? why ? we have insurance*
Advances:[1]  $1,963.50

Amount Held in Suspense:  $0.00

[1]*Other Fees and Advances include those amounts assessed in accordance with
your loan documents, and/or permitted by applicable law, or that were authorized for
services rendered.*

You are also responsible for paying any amounts that become due from the date of this
letter through the expiration date set forth in Paragraph 3 below. These amounts may
include, but are not limited to, taxes, insurance, inspection fees, and other fees, as
permitted by applicable law.

If you have any reason to dispute the past-due amount listed above, or if you believe your
Loan is current, please call us at one of the numbers listed below.

3. Action required to cure the default: You must pay the Total Monthly Payments listed in Paragraph 2 within 35 days from the date of this notice in order to cure this default. All late fees, NSF fees, and other fees and advances are still valid and will need to be repaid under the terms of your loan documents.

4. If you fail to cure the default on or before 02/14/2017, Chase may accelerate the maturity of the Loan, declare all sums secured by the Security Instrument immediately due and payable, commence foreclosure proceedings, and sell the Property. If this happens, Chase may be entitled to collect its expenses incurred in pursuing the remedies provided in the Security Instrument, which may include, but not be limited to, allowable foreclosure/attorney fees, and other expenses permitted by your loan documents or applicable law.

5. You have the right to reinstate after acceleration of the Loan and the right to bring a court action to assert the nonexistence of a default, the right to assert in the foreclosure proceeding the non-existence of a default, or any other defense to acceleration, foreclosure, and sale. However, the amount required to reinstate may be higher than what is owed under Paragraph 2 above, due to additional fees and charges that we may be entitled to collect under the loan documents and applicable law, including attorney fees related to any foreclosure action we initiate.

6. <u>If your loan is guaranteed by the Rural Housing Service</u>:
   If the default is not cured by the date referenced above, the account is referred to foreclosure, and the Rural Housing Service pays us a loss claim as a result of a foreclosure, you may be responsible for repaying this claim to the Rural Housing Service. If your personal liability for this account has not been discharged in a bankruptcy, the Rural Housing Service may use all options, including those under the Debt Collection Improvement Act (DCIA) to recover the full amounts due. The DCIA provides for the collection of outstanding federal debts through the Treasury Offset Program which allows federal payments such as social security benefits to be reduced or "offset" in order to repay the outstanding debt.

7. Kindly remit the total amount due, shown in Paragraph 2 above, to the remittance address listed below. Please note that Chase policy requires certified funds if two insufficient funds (NSF) payments have been received in the last six months. In this event, Chase will not accept a Direct Check, FastPay or SpeedPay. Payments cannot be made at Chase retail bank branches. Please refer to the addresses below for payment information or contact us if you have any questions:

|  |  |
|---|---|
| Regular Mail: | CHASE<br>PO BOX 9001871<br>LOUISVILLE KY 40290-1871 |
| Overnight Mail: | CHASE<br>6716 GRADE LANE - BUILDING 9<br>LOUISVILLE, KY 40213-1407 |

Except as required by law, we are under no obligation to accept less than the full amount owed. If you send us less than the full amount owed, we may in our sole discretion apply such partial payment to your Loan without waiving any default or waiving our right to accelerate the Loan and continue with foreclosure proceedings in accordance with Paragraph 4 above.

8. If you are unable to pay the amount past due, Chase has a variety of homeowner assistance options that might help you resolve your default and keep your home; however, we need to talk with you to discuss these options and determine which of them might be appropriate for your circumstances. Please call us as soon as possible at 1-800-848-9380.

9.  While the Loan remains in default, we will perform certain tasks to protect our interest in the Property, including visits to your Property at regular intervals during the default. This will be done to determine, as of the date of the inspection, the property condition, occupancy status, and possibly your plans for curing the default and paying this Loan on time. You should anticipate that any costs incurred by Chase will be added to the amount you now owe if permitted by your loan documents or applicable law.



**Here's where to look for help**
You can find additional resources below to help you with your mortgage:

· The Homeowners HOPE Hotline can take your call anytime at 1-888-995-HOPE (1-888-995-4673).
· The U.S. Department of Housing and Urban Development (HUD) has a list of agencies that offer free mortgage-assistance counseling. For a list of agencies, call HUD at 1-800-569-4287, or 1-800-877-8339 for TTY services, or go to hud.gov and, under the "Resources" tab, select "Foreclosure Avoidance Counseling."

If you have questions, please call us at one of the numbers below.

Sincerely,

Chase
1-800-848-9380
1-800-582-0542 TTY
www.chase.com

Esta comunicación contiene información importante acerca de la cuenta. Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-800-848-9380.

**Important Legal Information**

**We are a debt collector**
This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, to the extent your original obligation was discharged or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance with non-bankruptcy law and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. Nothing in this letter (including our use of the words "your," "loan," "mortgage," or "account") means that you're required to repay a debt that's been discharged. Any payment you make on the account is voluntary, but we may still have rights under the security instrument, including the right to foreclose on the property.

If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.

**Information for Servicemembers and their dependents**
If you or any occupant of your home are or recently were on active Military duty or related active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA), state law, or Chase policy. This includes protection from foreclosure or eviction, and in some cases, interest rate benefits. Some protections also may be available if you are the dependent of an eligible Servicemember. Although Servicemember interest rate benefits under the Servicemembers Civil Relief Act don't allow you to defer payments, California law allows for a six-month deferral if certain conditions are met.

For more information, please call Chase Military Services at 1-877-469-0110.

Plantiff
Exhibit 8



& BLOCK, LLP

Telephone: (972) 341-5398
Telecopier: (972) 661-7720

April 27, 2017

**VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED**
7160 9668 9670 8269 0578

LASHONDRA SIMPLIS
864 SOUTHBRIDGE BLVD
AKA LOT 907
SAVANNAH, GA 31405

| | | |
|---|---|---|
| RE: | Secured Creditor: | JPMORGAN CHASE BANK, NATIONAL ASSOCIATION |
| | Mortgage Servicer: | JPMORGAN CHASE BANK, NATIONAL ASSOCIATION |
| | Loan #: | ******1925 |
| | Our File #: | 00000006689913 |
| | Property Address: | 864 SOUTHBRIDGE BLVD |
| | | SAVANNAH, GEORGIA 31405 |

**PLEASE BE ADVISED THAT THIS LAW FIRM IS ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

This law firm represents JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, the Mortgage Servicer, in its mortgage banking activities in the State of Georgia. We have been authorized by the Mortgage Servicer to initiate legal proceedings in connection with the collection of a debt associated with a Note and Security Deed (the "Debt").

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION holds the duly endorsed Note and is the current assignee of the Security Deed to your property. JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, acting on behalf of and, as necessary, in consultation with JPMORGAN CHASE BANK, NATIONAL ASSOCIATION (the current investor on your loan), is the entity with the full authority to negotiate, amend, and modify all terms of your loan. Pursuant to O.C.G.A. § 44-14-162.2, you may contact JPMORGAN CHASE BANK, NATIONAL ASSOCIATION at: JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, 3415 VISION DRIVE, COLUMBUS, OH 43219, 866-550-5705. Please note that, pursuant to O.C.G.A. § 44-14-162.2, you are not entitled by law to an amendment or modification of the terms of your loan.

By separate communication (the "Initial Communication Letter") you have been advised of your rights under the Fair Debt Collection Practices Act. That letter also advised you of certain rights (the "Borrower's Rights" - including your right to validate the Debt, which you could exercise within 30 days of your receipt of the Initial Communication Letter. Nothing in this letter will prevent you from exercising the Borrower's Rights as explained in the Initial Communication Letter.

Please be advised that the secured creditor intends to enforce the provisions in the referenced Note and Security Deed relative to payment of attorney's fees in addition to the principal and interest owed. The terms of your Note call for the addition of attorney's fees to the Debt in cases of collection by or through an attorney. The Official Code of Georgia, Section §13-1-11 requires that you be allowed ten (10) days from the receipt of this letter to pay the entire amount owed without having to pay attorney's fees. After that time, full attorney's fees allowed by Georgia law may be added to the Debt. For an updated, current and accurate payoff figure call this firm's Homeowners' Assistance

FCGA_Accl_13-1-11_Ltr.rpt - 07/28/2016 / Ver-34



Department at (972) 341-5398.

This letter is formal notice of the following:

1. Payment of the past due balance on the Debt has not been received by the Mortgage Servicer. Because of this default, the secured creditor has elected to ACCELERATE the maturity of the Debt.

2. The amount of the Debt as of the date of this notice, according to the records of the Mortgage Servicer, is $668,741.31. Because of interest and other charges that may vary from day to day, the amount due on the day you pay may be greater. If you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write or call the Homeowners' Assistance Department of this firm at (972) 341-5398. Payment must be made in certified funds, cashier's check or money order(s).

3. Enclosed is a copy of the Notice of Sale Under Power submitted to the publisher of the legal newspaper. The sale will be conducted within the legal hours of sale on Tuesday, June 06, 2017 at the CHATHAM County Courthouse.

4. All of the obligors and guarantors (if any) of the Debt have the right to reinstate the loan as provided in the Security Deed and as provided by Georgia law. You may obtain reinstatement figures by calling the Homeowners' Assistance Department of this firm at (972) 341-5398.

5. All of the obligors and guarantors (if any) have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and foreclosure which they may have.

Please be advised that if you are currently or have been, within the last (3) months, in the military service AND if you joined after signing the Security Deed now in foreclosure, you may be entitled to relief under the Service Members Civil Relief Act 50 U.S.C. App. §§501-596, et seq. In particular, the provisions contained in 50 U.S.C. §502 are designed for the benefit of persons in the military service whose ability to comply with the terms of their mortgage obligation is materially affected by reason of their military service. If you believe you are entitled to relief under the Service Members Civil Relief Act of 2003, please contact our office immediately. When contacting this office as to your military service, you must provide positive proof of your military status. If you do not provide this information, we will assume that you are not entitled to protection under this Act.

Please note that this letter is being sent to you in order to comply with Georgia Statutory foreclosure law requirements and in no way prevents you from exercising the Borrower's Rights as explained in the Initial Communication Letter.

Sincerely,

*Ellen F. Shepherd*

Ellen Shepherd

BARRETT DAFFIN FRAPPIER LEVINE & BLOCK, LLP



**Notice of Sale Under Power**

State of Georgia
County of CHATHAM

Under and by virtue of the Power of Sale contained in a Deed to Secure Debt given by FRAIN SIMPLIS AND LASHONDRA SIMPLIS to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR TRANSLAND FINANCIAL SERVICES, INC, ITS SUCCESSORS AND ASSIGNS, dated 01/31/2007, and Recorded on 02/13/2007 as Book No. 320Z and Page No. 683, CHATHAM County, Georgia records, as last assigned to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION (the Secured Creditor), by assignment, conveying the after-described property to secure a Note of even date in the original principal amount of $650,000.00, with interest at the rate specified therein, there will be sold by the undersigned at public outcry to the highest bidder for cash in CHATHAM County, before the Courthouse door, and within the legal hours of sale on the first Tuesday in June, 2017, the following described property:

ALL THAT CERTAIN LOT, TRACT OR PARCEL OF LAND SITUATE, LYING AND BEING IN COUNTY OF CHATHAM, STATE OF GEORGIA., AND BEING KNOWN AS LOT 907, SOUTHBRIDGE AT BERWICK PLANTATION, PHASE I-A AS SHOWN AND DESIGNATED ON A MAP PREPARED FOR SOUTHBRIDGE DEVELOPMENT COMPANY, INC. BY THOMAS & HUTTON ENGINEERING CO., BOYCE L. YOUNG, RLS#2282, DATED FEBRUARY 17, 2004, BEING KNOWN AS A SUBDIVISION PLAT OF SOUTHBRIDGE AT BERWICK PLANTATION, PHASE I-A, LOTS 881-971, BEING PORTIONS OF FUTURE DEVELOPMENT PARCELS 2, 3 & 5 OF SOUTHBRIDGE PHASE 17, ALSO TRACT "F-1" AND A PORTION OF TRACTS "F-2" AND "F-3" OF THE C&S TRACT KNOWN AS BERWICK PLANTATION, 7TH G.M.D., RECORDED IN SUBDIVISION MAP 30-S, PAGE 8, CHATHAM COUNTY, GEORGIA RECORDS. REFERENCE IS HEREBY MADE TO SAID SUBDIVISION MAP BOOK FOR BETTER DETERMINING THE METES, BOUNDS AND DIMENSIONS OF THE PROPERTY HEREIN CONVEYED.

The debt secured by said Deed to Secure Debt has been and is hereby declared due because of, among other possible events of default, failure to pay the indebtedness as and when due and in the manner provided in the Note and Deed to Secure Debt. Because the debt remains in default, this sale will be made for the purpose of paying the same and all expenses of this sale, as provided in the Deed to Secure Debt and by law, including attorney's fees (notice of intent to collect attorney's fees having been given).

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION holds the duly endorsed Note and is the current assignee of the Security Deed to the property. JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, acting on behalf of and, as necessary, in consultation with JPMORGAN CHASE BANK, NATIONAL ASSOCIATION (the current investor on the loan), is the entity with the full authority to negotiate, amend, and modify all terms of the loan. Pursuant to O.C.G.A. § 44-14-162.2, JPMORGAN CHASE BANK, NATIONAL ASSOCIATION may be contacted at: JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, 3415 VISION DRIVE, COLUMBUS, OH 43219, 866-550-5705. Please note that, pursuant to O.C.G.A. § 44-14-162.2, the secured creditor is not required to amend or modify the terms of the loan.

To the best knowledge and belief of the undersigned, the party/parties in possession of the subject property known as 864 SOUTHBRIDGE BLVD, AKA LOT 907, SAVANNAH, GEORGIA 31405 is/are: FRAIN SIMPLIS AND LASHONDRA SIMPLIS or tenant/tenants.

Said property will be sold subject to (a) any outstanding ad valorem taxes (including taxes which are a lien, but not yet due and payable), (b) any matters which might be disclosed by an accurate survey and inspection of the property, and (c) all matters of record superior to the Deed to Secure Debt first set out above, including, but not limited to, assessments, liens, encumbrances, zoning ordinances, easements, restrictions, covenants, etc.

The sale will be conducted subject to (1) confirmation that the sale is not prohibited under the U.S. Bankruptcy Code; and (2) final confirmation and audit of the status of the loan with the holder of the security deed.

Pursuant to O.C.G.A. Section 9-13-172.1, which allows for certain procedures regarding the rescission of judicial and nonjudicial sales in the State of Georgia, the Deed Under Power and other foreclosure documents may not be provided until final confirmation and audit of the status of the loan as provided in the preceding paragraph.

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION as
Attorney In Fact for
FRAIN SIMPLIS AND LASHONDRA SIMPLIS

THIS LAW FIRM IS ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

00000006689913

BARRETT DAFFIN FRAPPIER LEVINE & BLOCK, LLP .
4004 Belt Line Road, Suite 100
Addison, Texas 75001
Telephone: (972) 341-5398

FCGA_NOS_UnderPower.rpt - (07/28/2016)/Ver-21

Plantiff
Exhibit 9          20)



January 6, 2017

000005 - 1 of 16 NSPGMCL0-Z1 0 000000
Frain Simplis
864 Southbridge Boulevard
Savannah, GA 31405

**We've completed our research on your escrow concerns**

Customer Name:        Frain Simplis
Account:              ******6756
Reference Number:     20161116EOCHF0050-1
Property Address:     864 Southbridge Boulevard
                      Savannah, GA 31405

Dear Frain Simplis:

We're responding to your letter dated December 20, 2016, which was received in our office on December 23, 2016, about your mortgage loan listed above.

We've carefully reviewed the history of this loan, and we have confirmed we serviced it in good faith, consistent with our lending guidelines. We didn't find any instances of misrepresentations or attempts to mislead or deceive you. As we've advised you, our position is that you have undertaken a valid, binding, and legally enforceable obligation.

We have previously addressed your concerns about this loan, and we're enclosing copies of our letters dated July 22, 2016, October 11, 2016, and November 30, 2016, without enclosures, for your records.

We're sorry the copy of the loan's Good Faith Estimate you received wasn't legible, and we're enclosing another copy for your review.

**Here's information about your escrow account**
We're enclosing an escrow transaction history for this loan which details all of the activity of the loan's escrow account.

When this construction loan was converted to your current conventional loan ending in 1925, there was a negative escrow balance of $49,972.86, which was added to the new loan's principal balance. This amount included the following:

> $13,428.00 was paid for insurance
> $36,544.86 was paid for taxes

The escrow transaction history provides the specific dates and amounts of the payments we've made.

This loan did not originate with an escrow account; however, one was established in 2010 after we were notified your insurance and taxes were past due. We made these payments to protect our interest in the property.

# RULE 3.2 CERTIFICATION AND STANDING ORDER NOTICE

Pursuant to rules 3.2 and 3.4 of the Uniform Superior Court Rules, I hereby certify that:

(CHECK ONE)

[ ] no case has heretofore been filed in the Superior Court of the Eastern Judicial Circuit involving substantially the same parties or substantially the same subject matter or substantially the same factual issues which would require the petition-pleading to be specifically assigned to the judge whom the original action was or is assigned.

OR

[ ] this petition-pleading involves substantially the same parties or substantially the same subject matter or substantially the same factual issues as in case # _____

Fraint Cashundra Sing (Plaintiff) vs. J. P. Morgan Chase (Defendant)

This __20th__ day of __July__ , 20 __17__.

Pro Se Litigant _____ Attorney/Plaintiff

— · — · — · — · — · — · — · — · —

# Notice of Eastern Judicial Circuit Standing Orders

**YOU MUST SERVE THIS NOTICE UPON THE OPPOSING PARTY** together with the initial filing of suit, counterclaim, crossclaim or interpleader. The Superior Court has adopted the following STANDING ORDERS which may apply to you and which may affect your ability to obtain a hearing:

1. **MANDATORY MEDIATION ORDER**, effective January 3, 2011: This order requires parties to mediate their case prior to the pretrial conference or trial. Certain limited cases are exempt from the mediation requirement. Please secure a copy of the mediation order and determine if it applies to your case.
2. **ORDER ON PRODUCTION OF DOCUMENTS**, effective March 15, 2002 and reinstated January 3, 2011: This order applies to all domestic cases in which temporary or permanent financial relief is sought. The order requires the parties in such cases to exchange certain documents listed in the order within a specified time frame. A copy of the production of documents order must be served upon the defendant together with the complaint and summons.
3. **TRANSITIONAL PARENTING SEMINAR ORDER**, effective March 10, 2010 and reinstated January 3, 2011: This order requires the parties in certain domestic cases involving the interest of children under 18 years of age to complete the "Transitional Parenting Seminar". Please secure a copy of the mediation order and determine if it applies to your case.

COPIES OF THE STANDING ORDERS ARE AVAILABLE AT THE OFFICE OF THE CLERK OF SUPERIOR COURT OR AT:

http://www.chathamcounty.org/department_freeform_T7_R132.html

FORM 3.2 REVISED JAN 2011

ENTERED DLB    JUL 2 0 2017