**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | | |
|---|---|---|
| FRAIN SIMPLIS; | ) | |
| LASHONDRA SIMPLIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CASE NO.: 17-cv-00183-JRH-GRS |
| | ) | |
| JPMORGAN CHASE BANK; | ) | |
| TRANSLAND FINANCIAL SERVICES; | ) | |
| WASHINGTON MUTUAL BANK; | ) | |
| and All Persons claiming any interest in real | ) | |
| property located at 864 Southbridge Blvd., | ) | |
| Savannah, Georgia 31405 aka lot 907; | ) | |
| and Does 1-20, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS AND MEMORANDUM OF LAW

Defendant JPMorgan Chase Bank, N.A. ("Chase") hereby moves this Court to dismiss Plaintiffs' Complaint for Damages and Equitable Relief ("Complaint"), pursuant to Fed. R. Civ. P. 12(b)(6) and, in support thereof, states as follows:

**I.      INTRODUCTION**

This is the third separate action and sixth complaint that Plaintiffs Frain Simplis and LaShondra Simplis have filed related to their 2007 construction loan. Both prior actions—one against Washington Mutual Bank and one against Chase—were dismissed for failure to state a claim. Undeterred, Plaintiffs now allege thirteen claims against Chase, many of which were, or could have been, raised in the prior litigation. Because Plaintiffs again fail to state a claim for relief, the Complaint, like those in the prior actions, should be dismissed.

1

Plaintiffs obtained a $650,000 construction loan to purchase a lot and build a primary residence in 2007.  Plaintiffs claim that the loan was "never funded," but also allege that construction was completed, that they received a certificate of occupancy, and that they now reside in the home as their principal residence.  Plaintiffs complain that misconduct by Transland Financial Services, Washington Mutual Bank, and Chase render the note and related security deed unenforceable.  Plaintiffs seek an injunction against foreclosure, a declaration that the defendants do not hold a valid lien on the property and cannot collect on the note, and $20 million in damages.  Plaintiffs' Complaint does not sufficiently plead any claim for relief, as explained below, and the Complaint should be dismissed with prejudice.

## II.     FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

### A.     Factual Allegations[1]

Plaintiffs obtained a loan (the "Loan") from Transland Financial Services, Inc. ("Transland") to purchase a building lot at 864 Southbridge Boulevard, Savannah, Georgia 31405 and to construct a residence (the "Property").  (Compl. ¶ 12a & Ex. 1 at 1.)  In connection with the Loan, Plaintiffs executed a promissory note in the principal amount of $650,000 in favor of Transland on January 31, 2007 (the "Note") and simultaneously granted Transland a security interest in the Property (the "Security Deed").  (Compl. Exs. 1 and 1a.)  Plaintiffs paid $132,000 for the lot, and the remaining $518,000 was placed into an account for the construction of the home.  (Compl. ¶¶ 12a, 13a.)  Transland controlled the account and agreed to pay "draws" to the contractor during the construction.  (Compl. ¶¶ 12a, 12a1, 13c.)  Plaintiffs also obtained a home equity line of credit from Transland.  (Compl. ¶ 12a.)  Plaintiffs and Transland contemplated that

---

[1]   The allegations are drawn from the pleadings and are accepted as true only for the purposes of this motion to dismiss.

the Loan would be converted into a 30-year mortgage upon the occurrence of certain conditions. (Compl. ¶ 12a and Ex. 1 at 4.)

Construction of the home, originally slated for completion in 2008, was delayed, and the certificate of occupancy was not issued until 2012. (Compl. ¶ 13b and Ex. 3.)  Plaintiffs allege that in 2007 and 2008, Transland "failed to fund the project by not paying the draws as they were submitted" and over-charged Plaintiffs in the total amount of   $395,000.  (Compl. ¶¶ 12b1, 13c.) Plaintiffs allege that they incurred damages as a result of the delay, including the costs of alternate housing and "other items."  (Compl. ¶¶ 12d, 12e.)

Chase subsequently became the holder and servicer of the Note. (Compl. ¶ 12b1, Ex. 4 at 2.)  Plaintiffs allege that Chase "as a successor in interest of the Note inherits all defenses and deficiencies existing under the Note and how it was handled by CHASE's predecessors." (Compl. ¶ 12b1.)  Chase converted the construction Loan into a conventional 30-year mortgage (the "Converted Loan"), as contemplated by the Note.   (Compl., Ex. 9 at 1 ("When this construction loan was converted to your current conventional loan . . . there was a negative escrow balance of $49,972.86, which was added to the new loan's principal balance.").) Plaintiffs defaulted on the Converted Loan by failing to make monthly payments beginning on November 1, 2016.  (Compl., Ex. 7 at 1, Ex. 9 at 1.)  Chase scheduled Plaintiffs' Property for foreclosure on June 6, 2017.  (Compl. ¶ 14.)  Plaintiffs do not allege that the foreclosure sale was completed—in fact, it was not.

Plaintiffs also allege that they entered an oral "Novated/Modified contract" with Chase in October 2016, which Chase allegedly promised to reduce Plaintiffs' monthly payments and not

to foreclose.[2]  (Compl. ¶¶ 18a, 149–154 ("Breach of . . . Oral Contracts [Novation]").)

Plaintiffs conclude that because they did not receive a certificate of occupancy until 2012, "the object of the contract was thwarted, the loan is worthless for failure of consideration, and material inference with performance" rendered the Note "legally worthless."  (Compl. ¶ 76.)  Notwithstanding the same, Plaintiffs acknowledge that the Property was completed and serves as their primary residence.  (Compl. ¶ 55.)

## B.   Procedural Background

Frain Simplis ("Simplis") filed two prior lawsuits related to his Loan: one against Washington Mutual Bank ("WaMu") and, later, the FDIC (the "WaMu Action"), and one against Chase (the "Prior Chase Action").[3]

### 1.   The WaMu Action

Simplis filed the WaMu Action on February 29, 2008, in the Superior Court of Chatham County, styled as *Simplis v. Washington Mutual Bank*, Civil Action No. CV08-0607-KA.[4]  Simplis alleged that in November 2007, WaMu acquired his Loan from Transland and, like Transland before it, "failed to fund draws in the construction of Mr. Simplis's home in violation of agreements assumed by Washington Mutual Bank."  (WaMu Compl. ¶¶ 10, 13.)  Simplis also

---

[2] This allegation is inconsistent, however, with Plaintiffs' first default on the Converted Loan occurring in November 2016.  (*See* Compl., Ex. 7 at 1.)

[3]   The Court may take judicial notice of its own records and other court filings as public records whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); *Shan Fu v. Reed*, 13 F. Supp. 3d 1371, 1373 n.5 (M.D. Ga. 2014).  Courts routinely consider prior court filings, either sua sponte or attached to a motion to dismiss, when evaluating claim preclusion, without converting the motion to one for summary judgment. *See Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 892–93 (11th Cir. 2013) (taking judicial notice of a prior court order for purposes of adjudicating res judicata on a motion to dismiss).

[4]   The complaint (the "WaMu Complaint") and amended complaint (the "WaMu Amended Complaint") in the WaMu Action are attached to the Notice of Removal, *Simplis v. Washington Mutual Bank*, No. 4:08-cv-130 (S.D. Ga. filed July 10, 2008), ECF No. 1 at Ex. B at 16, 52.

4

alleged that WaMu "promised to present Frain Simplis with a modification package, that would transition Simplis's loan from a construction loan to a permanent loan," but failed to do so. (WaMu Am. Compl. ¶¶ 3–4.)  Simplis asserted claims of "breach of contract/tortious conduct," fraud, and promissory estoppel, and sought punitive damages and attorney's fees. (WaMu Compl. ¶¶ 13–15, WaMu Am. Compl. ¶¶ 2–15.)

WaMu removed the action to federal court on July 10, 2008.  After WaMu entered into receivership with the FDIC in 2008, the WaMu Action was stayed, Simplis exhausted administrative remedies at the FDIC, and, in 2014, the action was transferred to the Northern District of Georgia, docketed as *Simplis v. Washington Mutual Bank*, No. 1:14-cv-2307-SCJ.  On January 6, 2015, the Northern District of Georgia dismissed Simplis's breach of contract and fraud claims for failure to plead a plausible claim for relief, consolidated the WaMu Action with other similar cases under the lead case of *Gray v. FDIC*, Civil Action No. 1:14-cv-2311-SCJ, and granted the plaintiffs leave to amend.  The plaintiffs filed a second amended complaint (the "WaMu Second Amended Complaint," attached hereto as **Exhibit A**), which alleged claims for breach of contract and promissory estoppel and that WaMu failed to make promised periodic payments on the loans according to a "draw schedule."  (WaMu Second Am. Compl. ¶¶ 74–77.) The court dismissed the WaMu Second Amended Complaint on January 21, 2016 (the "WaMu Dismissal Order," attached hereto as **Exhibit B**).  The court ruled that the plaintiffs' claim were barred by 12 U.S.C. § 1823(e), because the promises on which the claims were based—namely the "draw schedules"—were not in writing and did not meet other federal statutory

requirements.[5]  (WaMu Dismissal Order at 5–6, 10).  The plaintiffs did not appeal.

> ## 2.     The Prior Chase Action

Meanwhile, on April 1, 2010, the same set of plaintiffs, including Simplis, filed an action against Chase in the Superior Court of Chatham County, styled as *Arms v. JP Morgan Chase & Co.*, Civil Action No. CV10-0549-KA (the "Prior Chase Complaint").[6]  Chase removed the action to this Court, and the plaintiffs filed an amended complaint on November 19, 2010 (the "Prior Chase Amended Complaint," attached hereto as **Exhibit C**).  In the Prior Chase Amended Complaint, the plaintiffs alleged that at the time they entered their loans with Transland, the lender had no ability to perform its obligations and fraudulently concealed its cash flow problems from creditors and debtors.  (Prior Chase Am. Compl. ¶¶ 11–14.)  The plaintiffs also recounted how Chase purchased WaMu's loans from the FDIC.  (*Id.* ¶¶ 16–17.)  The plaintiffs contended that the loans were "entirely voidable," and that Chase "has no right to collect payment on these loans," because the FDIC was not a holder in due course due to Transland's fraud and, thus, neither was Chase.  (*Id.* ¶¶ 18–22.)  The plaintiffs sought a declaration that (1) the FDIC was not a holder in due course, (2) Chase was not a holder in due course, (3) the Loan agreements were voidable based on Transland's conduct, and (4) that Chase "breached its contractual obligations to Plaintiffs by failing to properly fund and service the construction loan agreements."  (*Id.* ¶ 25.)  The plaintiffs also sought to quiet title and asked the court for a ruling that Chase "is not entitled

---

[5]     Section 1823(a)(1)(A)–(D) provides that "[n]o agreement which tends to diminish or defeat the interest of the [FDIC] . . . shall be valid against the [FDIC] unless" certain criteria are met, including that the agreement is in writing, executed by a depository institution, was approved by the board of directors of the depository institution or its loan committee, and was an official record of the depository institution.

[6]     *See* Complaint for Declaratory Judgment and Action to Quiet Title, *Arms. v. JP Morgan Chase & Co.*, No. 4:10-cv-112-WTM-GRS (S.D. Ga. May 7, 2010), ECF No. 1-1 at 4.

to any payments" on the Loan, that Chase must stop all collection efforts, and that "each of the Plaintiff's aforementioned properties are free and clear of any lien by Transland, Washington Mutual Bank, or [Chase]." (*Id.* ¶ 27.)

This Court dismissed the Prior Chase Amended Complaint ruling that the plaintiffs failed to sufficiently allege that the FDIC was not a holder in due course. *Arms v. JP Morgan Chase & Co.*, No. 4-10-cv-112-WTM-GRS, 2011 WL 13177239 (S.D. Ga. July 18, 2011). This Court also held that Chase did not assume liability for "borrower claims" in the Purchase and Assumption Agreement for WaMu's assets and dismissed the quiet title claim because it was derivative of the declaratory relief claim and the plaintiffs failed to sufficiently plead the claim. (*Id.* at *3–5.) The Eleventh Circuit affirmed dismissal on the grounds that Chase did not acquire liabilities related to borrower claims on the loans under the Purchase and Assumption Agreement. *Arms v. JP Morgan Case & Co.*, 451 F. App'x 882, 884 (11th Cir. 2012).

### 3.      The Present Action

Plaintiffs filed this action in the Superior Court of Chatham County on July 20, 2017, and Chase removed the action to this Court. Plaintiffs assert eleven separate "claims" against Chase: (1) declaratory relief, (2) TRO/preliminary injunction, (3) fraudulent misrepresentation, (4) breach of good faith and fair dealing, (5) quiet title, (6) accounting, (7) promissory estoppel, (8) breach of written and oral contracts, (9) specific performance, (10) racketeering under Georgia's civil RICO statute, and (11) "to abate and bar the enforcement of the note and trust deed based on violation of the statute of limitations." Plaintiffs seek declaratory and injunctive relief and damages "in excess of" $20 million. (Compl. at 20.)

The Complaint contains confusing and contradictory allegations, in part because Plaintiffs have copied large passages of the Complaint verbatim from what appears to be a form internet complaint or from other litigants in Georgia, including factual allegations that have no conceivable connection to Plaintiffs' Loan.  *Compare* Compl. ¶¶ 18–176 *with*, *for example,* Amendment to Compl. ¶¶ 18–182 filed in *Gordon v. J.P. Morgan Chase Bank, N.A.*, Case No. 1:17-cv-13-WSD (N.D. Ga. Jan. 20, 2017), ECF No. 9 (the "Gordon Complaint," attached hereto as **Exhibit D**).  For example, Plaintiffs incorporate and reference a "co-filed Ex Parte Application for TRO and Preliminary Injunction" which does not exist and was not filed. (Compl. ¶ 55.)  The Complaint also references "DB," short for Deutsche Bank National Trust Company, a holdover from the Gordon Complaint, which asserted claims against Deutsche Bank.[7]  (*Compare* Compl. ¶ 83.1 *with* Gordon Compl. ¶ 83.1.)  The Complaint also internally cross-references paragraphs and factual allegations that do not exist.  (*See* Compl. at 18 nn. 7–8 (citing paragraph 140, which does not exist); *id.* at 18 n.6 and ¶¶ 148, 151 (referencing the fraud cause of action as containing allegations that defendants promised to modify Plaintiffs' Loan, but the fraud cause of action does not contain any such allegations).  The Complaint alleges that Chase "illegally influenc[ed] and attempt[ed] to influence witnesses and outcomes in a court process and to alter evidence," although neither this action nor the Prior Chase Action involved witnesses or evidence.  (Compl. ¶ 183.)  Finally, Plaintiffs' allegations that they stopped making monthly payments for 90 days at Chase's instruction (Compl. ¶ 151) contradicts Plaintiffs' contention that they did not miss any monthly payments (Compl. ¶¶ 13.2, 76.a).  These

---

[7]  The Complaint also refers to "Plaintiff"—singular—with the pronoun "she," another holdover from the Gordon Complaint.  (Compl. ¶ 110.)  Both complaints also reference Texas breach of contract law.  (Compl. at 15 n.3; Gordon Compl. at 17 n.4.)

allegations, too, are a holdover from the Gordon Complaint, which focused on alleged instructions from the lender to the borrower to withhold payments.  (*See* Gordon Compl. ¶¶ 76–77.)

## III.   ARGUMENT

### A.   Standard of Review.

Under Fed. R. Civ. P. 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted.  A complaint must contain factual allegations that, when accepted as true, are enough to raise a right to relief "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim and are "not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 678–79.

Although *pro se* complaints are liberally construed, even *pro se* litigants must meet this pleading standard.  *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007); *Nembhard v. JPMorgan Chase Bank, N.A.*, No. 1:13-CV-3957-WSD, 2014 WL 1764708, at *2 (N.D. Ga. Apr. 29, 2014) ("a pro se plaintiff must comply with the threshold requirements of the Federal Rules of Civil Procedure" and "a pro se complaint still must state a claim upon which the Court can grant relief") (quotation marks omitted).  Showing leniency to a *pro se* plaintiff does not permit the district court to "serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action."  *In re Unsolicited Letters to Fed. Judges*, 120 F. Supp. 2d 1073, 1074 (S.D. Ga. 2000) (quotation marks omitted); *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (same).

**B.      Plaintiffs' Claims are Barred by Claim Preclusion.**

Federal courts apply federal common law to determine the preclusive effect of a prior federal court judgment.  *Baloco v. Drummon Co., Inc.*, 767 F.3d 1229, 1246 (11th Cir. 2014). Res judicata, or claim preclusion, applies when four conditions are met: "(1) the prior judgment must have been rendered by a court of competent jurisdiction; (2) the prior judgment must be a final judgment on the merits; (3) both proceedings must involve the same parties or their privies; and (4) both cases must involve the same cause of action."  *Willis v. Cavalry Invs., LLC*, No. 1:14-cv-227, 2016 WL 3866565, at *2 (S.D. Ga. July 13, 2016) (citing *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001)).  To determine if the cases assert the same "cause of action," courts inquire whether the second action "arises out of the same nucleus of operative facts, or is based upon the same factual predicate, as a former action . . . ."  *Baloco*, 767 F.3d at 1247.  If so, the cases "are really the same 'claim' or 'cause of action' for purposes of res judicata."  *Id.*  Claim preclusion bars the litigation of not only the legal theories or specific claims presented in the prior case, but "'all legal theories and claims arising out of the same nucleus of operative fact [which could have been raised in the prior case].'" *Id.*

The elements of claim preclusion are satisfied here with respect to Plaintiffs' claims for declaratory relief, fraudulent misrepresentation, breach of contract (including the breach of good faith and fair dealing), civil RICO, and quiet title.  There is no dispute that a court of competent jurisdiction issued a final judgment on the merits in the Prior Chase Action.  *See, e.g.*, *Arms*, 451 F. App'x at 884 (affirming dismissal on the merits).  The Prior Chase Action also involved the

same parties or their privies—Chase and Simplis.[8]

Both actions also involve the same "cause of action" or factual predicate, because they concern the same Loan, the same Loan documents, the same succession of interest from Transland to WaMu to the FDIC to Chase, and the same alleged misrepresentations or nonpayment by Transland, WaMu, the FDIC, or Chase.  In the Prior Chase Action, Plaintiffs alleged that Chase did not have a right to collect on the Loan based, at least in part, on the wrongdoing of Transland and WaMu, that Chase was not a "holder in due course" and thus did not have a valid interest in or lien on the Property, that the Loan was voidable, and that Chase failed to fully fund the Loan.  (Prior Chase Am. Compl. ¶¶ 5, 14–15, 18, 20, 22, 25, 27.) Plaintiffs did or could have raised the issues presented here in the Prior Chase Action, including that Chase has no interest in the property (Compl. ¶ 46), that Chase has no right to enforce the Note or Security Deed (*id.* ¶ 75.1), that Chase failed to convert the Loan within one year (*id.* ¶ 76), that Chase holds a "worthless Note" (*id.*), that "Chase" breached the Note (*id.* ¶ 83.1), that Chase is liable for Transland's alleged excessive charges and accounting misconduct (*id.* ¶¶ 12b1, 12b2, 84), that Chase did not correct accounting errors caused by the prior owners or holders of the Note (*id.* ¶ 85), that "defendants" made "an offer based on fraud and with no intent

---

[8]   Plaintiff LaShondra Simplis was not a party to the Prior Chase Action, but she is in privity with her husband and joint tenant, Frain Simplis, who share identical interests in their property and with respect to the Security Deed.  LaShondra's interests therefore were adequately represented by Frain Simplis in the Prior Chase Action.  *See Spooner v. Wells Fargo Bank, N.A.*, No. 1:16-cv-3754-TWT-JSA, 2017 WL 4276818, at *7 (N.D. Ga. Feb. 8, 2017) (holding that two individuals who "took out a mortgage as husband and wife, co-borrowers and joint tenants" are "in privity for purposes of *res judicata*"); *see also* Compl. ¶ 13 (alleging that Plaintiffs are "joint tenants"); *id.*, Ex. 1a at 1 (Security Deed defining the "Borrower" as "FRAIN SIMPLIS, A MARRIED MAN JOINED BY HIS WIFE LASHONDRA SIMPLIS"); *id.* at 13 (Security Deed signed by Frain and LaShondra Simplis); *id.*, Ex. 2 (Warranty Deed defining Frain and LaShondra Simplis as "joint tenants with right of survivorship").

to fulfill the offer" (*id.* ¶ 182), and that Plaintiffs are entitled to quiet title (*id.* ¶¶ 107–12; Prior Chase Am. Compl. ¶ 27.)  Plaintiffs' claims for declaratory relief, fraudulent misrepresentation, breach of contract (including breach of good faith and fair dealing), civil RICO, and quiet title all were, or could have been brought, in the Prior Chase Action, and are now barred by claim preclusion.[9]

### C.   Plaintiffs Fail to State a Plausible Claim for Relief.

Plaintiffs fail to state a plausible claim for relief, and the Complaint should be dismissed.

#### 1.   Plaintiffs Fail to State a Claim for Declaratory Judgment or Quiet Title.

Plaintiffs seek a declaration that no defendant has "a right to enforce the alleged note or enforce the security deed, as a holder in due course," and that no defendant has "equitable title" or a valid interest in the property. (Compl. ¶¶ 46, 49.)  Plaintiffs' claim is essentially one for quiet title, because they ask the Court to determine the parties' respective rights in the property and to declare that Plaintiffs lack any further obligations under the Note.  (*See id.* ¶¶ 46–49.)

As an initial matter, this claim is barred by claim preclusion because Plaintiffs have already litigated whether Chase is a holder in due course and whether Chase had the right to

---

[9]   To the extent Plaintiffs seek to hold Chase liable for the wrongdoing of Transland or WaMu, the WaMu action also has preclusive effect here, because a court of competent jurisdiction issued a final judgment on the merits, and both actions involved the same cause of action, namely the factual predicate of alleged wrongdoing by Transland or WaMu. (*Compare* Compl. ¶¶ 12a1, 12b1, 12b2, 75.1, and 148, *with* WaMu Second Am. Compl. ¶ 40, 42, 77–78, 80–83; *see also generally* WaMu Dismissal Order.)  Both actions also involved the same parties or their privies, as Chase is in privity with WaMu for preclusion purposes as a result of the Purchase and Assumption Agreement.  *See Lomeli v. JPMorgan Chase Bank, N.A.*, No. 15-cv-4022, 2015 WL 12746210, at *7 (C.D. Cal. Oct. 5, 2015) (finding privity between Chase and WaMu); *Johnson v. JPMorgan Chase Bank, N.A.*, No. 1:13-cv-285, 2013 WL 2554415, at *5 (E.D. Tex. June 7, 2013); *Kuder v. JP Morgan Chase, N.A.*, No. 2:12-cv-1725, 2013 WL 789111, at *4 (E.D. Cal. Mar. 1, 2013).

collect on the Note.  Notwithstanding the preclusive effect of the Prior Chase Action, Plaintiffs

fail to state a claim for quiet title or a declaration that they hold superior title against the world.

Alleging a defect in another's title is insufficient to quiet title, because the party seeking to quiet

title "'must establish ownership of property on the strength of [his] own title.'"  *Braddy v.*

*Deutsche Bank Nat'l Trust Co.*, No. 1:13-cv-00931-SCJ, 2013 WL 12109505, at *4 (N.D. Ga.

Dec. 12, 2013).  Plaintiffs do not allege a sufficient factual basis to claim superior title to the

Property.  Plaintiffs transferred legal title in the Property to Mortgage Electronic Registration

System, Inc. ("MERS") as nominee for Transland and its successors and assigns by executing the

Security Deed.  (*See* Compl., Ex. 1a at 1–3.)  Plaintiffs thus retained only an "expectancy" in the

Property.  Plaintiffs fail to allege a plausible claim for declaratory judgment.  *Id.*; *see also*

*Benson v. GMAC Mortg., LLC*, No. 2:13-cv-38-WCO, 2013 WL 12134007, at *3 (N.D. Ga. Apr.

30, 2013) ("Any claim for declaratory judgment premised on the idea that GMAC does not have

any right, title, or interest in the Security Deed fails as a matter of law" where the "record clearly

shows that GMAC holds the Security Deed").

Plaintiffs' claim also fails for the independent reason that a party seeking to quiet title

must also attach to the complaint, among other things, a plat survey of the property, which

Plaintiffs have failed to do.  See O.C.G.A. § 23-3-62(c); *Constantin v. Wells Fargo Bank, N.A.*,

No. 2:13-cv-155-RWS, 2014 WL 793609, at *4 (N.D. Ga. Feb. 27, 2014) (dismissing a quiet

title claim for failure to comply with statutory requirements).

Moreover, Plaintiffs' Complaint lacks any well-pled factual allegations or any

documentary evidence that they tendered the full amount owing on the Loan.  A borrower who

has executed a deed to secure debt is not entitled to equitable or injunctive relief related to that

deed unless he first tenders to the lender the amount admittedly due. *Cochran v. Teasley*, 236 S.E.2d 635, 637 (Ga. 1977); *Hill v. Filsoof*, 618 S.E.2d 12, 14 (Ga. Ct. App. 2005).

Plaintiffs' Eleventh Cause of Action ("To Abate and Bar the Enforcement of the Note and Trust Deed . . .") is, substantively, a claim for a declaration that Chase cannot "enforce their Note rights as a matter of undisputed law." (Compl. ¶ 192.) Plaintiffs theorize that because "written contracts" have a statute of limitations period of six years, pursuant to O.C.G.A. § 9-3-24, and because "the debt was contractually due and payable under contract within one year" of the "close of escrow under the Construction Note," that the limitations period to enforce the Note expired in 2014, or six years after the Note's maturity in 2008. (Compl. ¶¶ 190–91.) Plaintiffs are mistaken that the Note is governed by § 9-3-24, which applies to "[s]imple contracts in writing." Rather, the Note is an instrument under seal and is governed by the 20-year statute of limitation in O.C.G.A. § 9-3-23 ("Actions upon . . . instruments under seal shall be brought within 20 years after the right of action has accrued"). (*See* Compl., Ex. 1 at 3 (stating "witness the hand(s) and seal(s) of the undersigned" in the body of the Note and including the notation "(Seal)" after Simplis's signature)); *see Maddox Realty & Mortg., Inc. v. First Nat'l Bank of Atlanta*, 196 Ga. App. 114, 115 (1990) (holding that a promissory note "constituted a contract under seal for which the applicable statute of limitation is 20 years").) Because the right to enforce the Note has not expired under the applicable statute of limitations, Plaintiffs' Eleventh Cause of Action seeking a declaratory judgment should be dismissed.

### 2. Plaintiffs Fail to State a Claim for Fraud or Fraudulent Misrepresentation.

To state a claim for fraud under Georgia law, the plaintiff must allege facts showing that "(1) the defendant knowingly made a false statement; (2) the defendant intended for the plaintiff

to act or refrain from acting in reliance on that statement; (3) the plaintiff justifiably relied on the defendant's false statement; and (4) the plaintiff's reliance resulted in damage." *C&C Family Trust 04/04/05 v. Axa Equitable Life Ins. Co.*, 44 F. Supp. 3d 1247, 1253 (N.D. Ga. 2014). Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." *See also id.* Pursuant to Rule 9(b), the plaintiff must allege "'(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

Plaintiffs fail to state a claim for fraud. Plaintiffs' claim is predicated on three factual allegations: that the Note is not in default and that Chase's default notices were therefore fraudulent (Compl. ¶¶ 75, 76.a), that Transland breached the Note and prevented or excused Plaintiffs' performance (*id.* ¶ 75.1), and that Chase told Plaintiffs to sign a "request for mortgage assistance" (*id.* ¶ 76b). These are not false statements, intentionally made, on which Plaintiffs relied and, as a result, suffered damages. Plaintiffs did not justifiably and detrimentally rely on any default notice by Chase; in fact, Plaintiffs filed this lawsuit to challenge the notices. Additionally, Chase cannot be liable for Transland's breach of the Note, because Chase did not acquire liability to borrowers associated with the WaMu loans. *Arms*, 451 F. App'x at 884; *see also City of Miami v. JPMorgan Chase & Co.*, 171 F. Supp. 3d 1309, 1313 (S.D. Fla. 2016). Moreover, a mere breach of contract does not constitute fraud. *Sec. Life of Denver Ins. Co. v. Shah*, 2012 WL 4321601, at *3 (S.D. Ga. Sept. 18, 2012); *Herrington v. City of Dublin*, 179 S.E. 845, 849 (Ga. Ct. App. 1935). Finally, Plaintiffs fail to allege any damages stemming from

15

signing a request for mortgage assistance.  Because Plaintiffs do not sufficiently plead fraud with particularity, Plaintiffs' claim should be dismissed.

### 3.    Plaintiffs Fail to State a Claim for Breach of Contract.

Plaintiffs' Fourth, Eighth, and Ninth causes of action all allege breach of written or oral contracts.  Plaintiffs base their claims on two primary allegations: (1) that Chase breached an implied duty of good faith and fair dealing by "never correcting the accounting errors caused initially by" Transland or WaMu (Compl. ¶ 85; *see also id.* ¶¶ 12b1, 75.1, 84), and (2) that Chase breached oral agreements not to foreclose and to modify Plaintiffs' monthly payments[10] (*id.* ¶¶ 83.1, 87, 151–52).

To the extent Plaintiffs seek to hold Chase liable related to alleged accounting misconduct of Transland or WaMu, the claims are barred by preclusion, because they were or could have been brought in 2010, when Simplis filed the Prior Chase Amended Complaint. Additionally, Chase did not acquire from WaMu liability related to the borrower claims against the original lenders, as explained above.  *See, e.g.*, *Arms*, 451 F. App'x at 884.

To the extent Plaintiffs seek to hold Chase liable for breach of an oral agreement related to the modification of the Loan or an agreement not to foreclose, such oral agreements are not enforceable in Georgia.  Under Georgia law, any contract for "sale of lands, or any interest in, or concerning lands" or "[a]ny commitment to lend money" must be written and signed to be binding on the promisor. O.C.G.A. § 13-5-30(4) & (7). Where an underlying contract must be in

---

[10]   Plaintiffs allege that "DB," meaning Deutsche Bank National Trust Company, agreed to these "two novations."   (Compl. ¶ 83.1; *see also* Gordon Compl. ¶¶ 12b, 83.1.)   These factual allegations and legal conclusions are plainly drawn from a prior action such as the Gordon Complaint (or another form complaint that preceded them both).   (*Compare* Compl. ¶¶ 83–87 *with* Gordon Compl. ¶¶ 83–87.)

writing, any modification to that contract must also be in writing. *RHL Props., LLC v. Neese*, 293 Ga. App. 838, 839 (2008); *see also McKinley v. Fed. Home Loan Mortg. Corp.*, No. CV 212-124, 2013 WL 4501327, at *6 (S.D. Ga. Aug. 22, 2013) ("an alleged agreement to reinstate or modify a mortgage loan is unenforceable unless it is in writing"); *Ingram v. CitiMortgage, Inc.*, 1:12-CV-03053-CC-JFK, 2013 WL 12098986, at *8 (N.D. Ga. June 18, 2013), *report & recommendation adopted,* 2013 WL 12098822 (N.D. Ga. Aug. 26, 2013) ("Plaintiffs also have not stated a claim for breach of a permanent loan modification contract because under the Statute of Frauds, mortgage agreements must be evidenced by a signed writing, and Plaintiffs have failed to demonstrate that there was a written loan modification agreement."); *P.B.R. Enters., Inc. v. Perren*, 243 Ga. 280, 282 ("oral promises of . . . a forbearance to foreclose, which were included in neither the sale contract nor in either of the deeds, were unenforceable"). Because Plaintiffs allege that the agreement to modify Plaintiffs' payments or not to foreclose was made orally (*see, e.g.*, Compl. at 15 ("Breach of Written [Note] and Oral Contracts [Novation]"), the agreement is unenforceable and Plaintiffs' claims based on breach of an oral agreement should be dismissed.

Additionally, Plaintiffs allege that the oral agreement was reached in October 2016 (Compl. ¶ 18a), and that the claimed default leading to the notice of foreclosure did not occur until Plaintiffs missed a payment due November 1, 2016 (Compl., Ex. 7 at 1). Plaintiffs do not allege that any agreement reached with Chase in October 2016 included a promise not to foreclose, notwithstanding future defaults. Therefore, even accepting as true Plaintiffs' allegation that the parties entered into an oral contract, and even assuming that the contract was

enforceable as to foreclosure in October 2016, Plaintiffs fail to state a claim for breach of that agreement, in light of a subsequent default.

Finally, Plaintiffs are not entitled to the remedy of specific performance because "to authorize specific performance, the terms of the contract must be clear, distinct, and definite." *Ford v. White*, 255 Ga. App. 250, 252 (2002).  Not only do Plaintiffs not have a contract, they do not allege the terms of the alleged promise in sufficient detail to permit specific performance. They allege only that the promises are more fully pleaded in the fraud cause of action (which they are not), or, elsewhere, that Chase agreed to "reduce the monthly payments" and agreed "not to foreclose."  (Compl. ¶¶ 18a, 148.)  Because Plaintiffs do not allege a promise with clear, distinct, and definite terms, Plaintiffs do not plead entitlement to specific performance. Plaintiffs' Fourth, Eighth, and Ninth claims must be dismissed.

### 4.     Plaintiffs Fail to State a Claim for Accounting.

In Georgia, an "equitable accounting is not a proceeding to which every litigant has a right." *Herring v. Standard Guar. Ins. Co.*, 238 Ga. 261, 262 (1977); *see also* O.C.G.A. § 23-2-70 (granting equity jurisdiction over matters of account in only limited circumstances, including where "accounts are complicated and intricate," and other circumstances not relevant to this action). An accounting is "not warranted if accounts are not unusually complicated and an adequate remedy is available at law . . . ." *Faircloth v. A.L. Williams & Assocs., Inc.*, 219 Ga. App. 560, 560 (1995).  Where the plaintiff alleges a cause of action for breach of contract that relates to the subject of the accounting claim, an accounting is unnecessary because the plaintiff may avail himself of the discovery process to determine amounts owed under the contract and the plaintiff has an adequate remedy at law. *Id.*; *see also Phillips v. Ocwen Loan Servicing, LLC*,

No. 1:12-CV-3861-WSD, 2013 WL 4854760, at *6 (N.D. Ga. Sept. 11, 2013) (citing *Gifford v. Jackson*, 223 Ga. 155, (1967)). Contracts "commonly used by homeowners," such as mortgage loan agreements are not the type of "complicated and intricate" accounts that require an equitable accounting. *Phillips*, 2013 WL 4854760, at *6 (denying a claim for accounting where the plaintiff asserted that a loan servicing company "incorrectly calculated amounts due under the terms of Plaintiff's loan and misapplied his mortgage payments, resulting in an allegedly incorrect determination that Plaintiff had defaulted on his loan obligations"). Accordingly, Plaintiffs' claim for accounting should be dismissed.

### 5.      Plaintiffs Fail to State a Claim for Promissory Estoppel.

In Georgia, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." O.C.G.A. § 13–3–44(a).  To state a claim for promissory estoppel, the plaintiff must allege "(1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the plaintiff[ ] to rely on such promise; (3) the plaintiff[] relied on such promise to [his or her] detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, plaintiff[] changed [his or her] position to [his or her] detriment by surrendering, forgoing, or rendering a valuable right."  *Armstrong v. Ocwen Mortg. Co.*, No. 4:13-cv-010, 2015 WL 5439742, at *4 (S.D. Ga. Sept. 15, 2015) (quoting *Mariner Healthcare, Inc. v. Foster,* 280 Ga. App. 406, 412 (2006)).

Promissory estoppel "'cannot be applied unless the promisee reasonably relied on the promise.'"  *St. Joseph Hosp., Augusta, Ga., Inc. v. Health Mgmt. Assocs., Inc.*, No. CV 107-104,

19

2011 WL 1225577, at *10 (S.D. Ga. Mar. 30, 2011).   "Promises that do not conform to the statute of frauds . . . will often be equally unenforceable under a promissory estoppel theory" because it "is unreasonable to rely on a substantial promise that has not been reduced to writing." *Johnson v. Univ. Health Servs., Inc.*, 161 F.3d 1334, 1340 (11th Cir. 1998); *see also Crider, Inc. v. Keystone Foods LLC*, No. 6:10-cv-39, 2011 49297754, at *9–10 (S.D. Ga. Oct. 17, 2011).

As explained above, modifications to loan agreements must be written to be enforceable. *See, e.g.*, O.C.G.A. § 13-5-30.   Plaintiffs do not allege that they reasonably relied on an oral promise "for reduced monthly payments and that no foreclosure will be imposed" (Compl. ¶ 148), because it is unreasonable to rely on a substantial promise that has not been reduced to writing. *See, e.g.*, *Johnson*, 161 F.3d at 1340; *see also Bussenius v. Bank of Am., N.A.*, No.1:11-cv-2408-AT, 2015 WL 11017806, at *10 n.14 (N.D. Ga. Feb. 19, 2015) ("an oral promise regarding a real estate loan may not support claims of fraud or promissory estoppel," because both of those claims "require reasonable reliance on the part of the plaintiff").

Plaintiffs' claim also fails to meet the *Iqbal-Twombly* pleading standard.   Plaintiffs allege that the promises forming the basis of their claim are "alleged more fully in the Fraud cause of action."   (Compl. ¶ 148; *see also id.* ("defendants must be estopped to deny the agreements consistent with the content of the FRAUD cause of action alleged, *ante*.").)   But Plaintiffs' fraud cause of action does not contain any allegations of a promise extended to Plaintiffs.   (*See* Compl. ¶¶ 51–56.)

Moreover, as explained above, Plaintiffs are not entitled to the remedy of specific performance because "to authorize specific performance, the terms of the contract must be clear, distinct, and definite."   *Ford*, 255 Ga. App. at 252.   Because Plaintiffs do not allege a promise

with clear, distinct, and definite terms, Plaintiffs do not plead entitlement to specific performance.

### 6.     Plaintiffs Fail to State a Claim for Civil RICO.

To state a claim under Georgia's civil RICO statute, the plaintiff must show a violation or conspiracy to violate the RICO statute, O.C.G.A. § 16-14-4; that as a result of this conduct the plaintiff suffered injury; and that the defendant's violation of or conspiracy to violate the RICO statute was the proximate cause of the injury, meaning that the injury was a direct result of a predicate act targeted toward the plaintiff.  *See Wylie v. Denton*, 323 Ga. App. 161, 165–66 (2013); *Mbigi v. Wells Fargo Home Mortg.*, 336 Ga. App. 316, 322 (2016).  Georgia's RICO statute makes it

> "unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." OCGA § 16–14–4(a). A "racketeering activity," also known as a "predicate act," is the commission of, the attempt to commit, or the solicitation or coercing of another to commit, a "crime which is chargeable by indictment" under one of forty categories of offenses. OCGA § 16–14–3(9)(A)(i)–(xli). And a "pattern of racketeering activity" means that there have been at least two acts of racketeering activity that are interrelated and that were done "in furtherance of one or more incidents, schemes, or transactions." OCGA § 16–14–3(8)(A).

*Wylie*, 323 Ga. App. at 164–65.  "[L]ike any other fraud action, a RICO claim based on fraud must be pleaded with specificity." *See Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 663 (11th Cir. 2015).

Plaintiffs fail to plead a viable RICO claim, let alone with particularity.  (Compl. ¶¶ 177–88.)  The claim consists only of conclusory allegations that Chase violated several enumerated statutes, without factual support.  (*Id.* ¶¶ 179–80.)  Many of the alleged statutory violations make no sense in the context of Plaintiffs' factual pleadings, including conclusory charges of

21

obstruction of justice, influencing witnesses, tampering with evidence, and committing securities fraud or theft.  (*Id.* ¶¶ 180, 183.)  Plaintiffs allege that "defendants knowingly and willfully committed extortion against plaintiffs Simplis by illegally making an offer based on fraud and with <u>no intent</u> to fulfill the offer which inter alia, materially affects the application of Internal Revenue Codes governing tax benefits and rights under federal and state laws in an effort and in order to continue to conduct defendants' racketeering enterprise." (*Id.* ¶ 182.)  Plaintiffs' claim is unintelligible and lacks the particularity required by Fed. R. Civ. P. 9(b).  *See Burgess*, 600 F. App'x at 663.  Plaintiffs also fail to allege in a nonconclusory manner that any racketeering activity has caused them any damages.  The civil RICO claim should be dismissed.[11]

### 7.   Plaintiffs Fail to State a Claim for TRO/Preliminary Injunction.

To obtain a preliminary injunction, a plaintiff must make four showings: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016).

It is unclear whether Plaintiffs actually seek a preliminary injunction, as Plaintiffs reference an "Ex Parte Application" that either has been or may be filed in the future.  (Compl.

---

[11]   The claim is also time-barred.  Georgia civil RICO claims must be brought within five years after the plaintiff discovers, or reasonably should have discovered, that he has been injured and the injury is part of a pattern.  O.C.G.A. § 16-14-8; *Cobb Cnty. v. Jones Grp. P.L.C.*, 460 S.E.2d 516, 522 (Ga. App. 1995).  Because Plaintiffs' civil RICO claim appears to be based on the same "fraud" alleged in the Prior Chase Action and the WaMu Action (Compl. ¶ 182), which were filed in 2010 and 2008, respectively, Plaintiffs' claim is barred by the statute of limitations, and should be dismissed.

¶ 52 ("*If* filed with this complaint *or moved for hereafter*, Plaintiffs hereby incorporates the content of the entire Application for TRO and Preliminary Injunction . . .") (emphasis added); *id.* ("The core facts and elements are set forth in the Ex Parte Application for TRO and Preliminary Injunction *to be filed*.") (emphasis added); *id.* ¶ 53 ("Plaintiffs is [sic] entitled to injunctive relief . . . for reasons stated" in the "Ex Parte Application").) Plaintiffs have *not* filed a motion for a restraining order or a preliminary injunction or any "Ex Parte Application." Because Plaintiffs' claim remains hypothetical, they fail to "nudge[]" their claim "across the line from conceivable to plausible," and the claim for a preliminary injunction should be dismissed for this reason alone. *Twombly*, 550 U.S. at 570.

To the extent Plaintiffs do seek a preliminary injunction, Plaintiffs are not entitled to such relief because they fail to demonstrate, among other things, a substantial likelihood of success on any of their claims for the reasons set forth above. Accordingly, the Court should dismiss the claim. *See Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994) ("Because we conclude that the plaintiffs failed to establish a substantial likelihood of success on the merits, we will not address the three other prerequisites of preliminary injunctive relief.").

Additionally, Plaintiffs are not entitled to injunctive relief because the Complaint lacks any well-pled factual allegations or documentary evidence that they tendered the full amount owing on the Loan. *See, e.g.*, *Hill*, 618 S.E.2d at 14.

## IV.    CONCLUSION

Defendant JPMorgan Chase Bank, N.A. respectfully requests that the Court grant this Motion and dismiss the Complaint with prejudice.

Submitted this 26th day of October, 2017.     KUTAK ROCK LLP

*/s/ Brian F. Hansen*
Brian F. Hansen
Georgia Bar No.: 323785
303 Peachtree Street NE, Suite 2750
Atlanta, Georgia 30308
Telephone: (404) 222-4600
brian.hansen@kutakrock.com


Attorneys for Defendant JPMorgan Chase
Bank, N.A.

4818-5290-2225.2

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 26th day of October, 2017 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and served the following parties via first class U.S. mail, postage pre-paid, as follows:

Frain Simplis
Lashondra Simplis
864 Southbridge Blvd.
Savannah, GA 31405

*Plaintiffs, pro se*

*/s/ Brian F. Hansen*
Brian F. Hansen

4818-5290-2225.2